Richard S. Heller, J.
Claimant is the owner of a 132-acre dairy farm located on the north side of Route 370 in the Town of Lysander. By a map filled in the Onondaga County Clerk’s office on December 3, 1959 the Power Authority of the State of New York appropriated a part of claimant’s farm pursuant to section 30 of the Highway Law, as made applicable by title 1 of article 5 of the Public Authorities Law. The description of the interest appropriated is headed therein as ‘ ‘ Permanent *130 Basement for Power Transmission Line ’ ’ and then provides: “ A permanent easement to be exercised in, on, over, under, thru and across the hereinafter described property for the purpose of constructing, erecting, reconstructing, replacing, relocating, operating, maintaining, repairing and removing line or lines for transmission of electricity and messages by means of electricity, including, but not limited to poles, towers, cross-arms, wires, cables, underground conduits, counterpoise, guys, stubs, anchors, brace poles, lightening- arrestors, and other appurtenant or supporting apparatus or structures; together with the right at all times to enter upon the premises to cut, trim, move, demolish and remove any and all brush, trees, buildings or structures, or other obstructions on said property; also the right of ingress, egress and regress at all times over, upon and across said property; and every right, privilege and authority which now or hereafter may be deemed necessary by the Power Authority of the State of New York, its legal representatives or successors for the complete enjoyment of the aforementioned easement.” So far as it affects this property as it existed at the time of the appropriation this description of rights also provided: “ Reserving, however, to the owner of the above described property and his successors in interest, the right and privilege of using such property, provided the exercise of such right and privilege does not interfere with or prevent the user and exercise of the permanent easement and rights hereinabove described. Notwithstanding the right and privilege herein reserved to the owner and his successors in interest to use such property, no building or other structures shall be erected, maintained or suffered upon the land herein-above described without the written consent of the Power Authority of the State of New York.”
The property described in this appropriation is a strip of land 300 feet wide and approximately 1,766 feet long running entirely across claimant’s farm on its east-west dimensions at a point approximately three quarters of the entire depth north from Route 370. All of the experts who testified directly on the question of damage to this claimant agree that the highest and best use of the property was for a dairy farm. These experts testifying on behalf of both the claimant and the State were remarkably close in the valuation of the property prior to the appropriation, ranging from a low by a witness for the State of $26,500 to a high by the expert for the claimant of $30,000.
The experts were likewise remarkably close together in the damage resulting from the 300-foot strip included within the *131 easement area. Claimant’s expert found that the taking was equivalent to a taking in fee and found the full value to be $1,350. Three of the experts who testified on behalf of the State found that the damage to this 300-foot strip amounted to 90% of the full value of the land prior to the appropriation or approximately $1,090.
The State contends that this amount of damage is all that was suffered by this claimant, asserting that the appropriation resulted in no consequential damage. The claimant asserts that the taking is complete leaving to him only the privilege of paying taxes and use of the property not actually covered by pole structures and for access to his remaining property north of the strip which is subject at any time to total revocation by the Power Authority. Thus the claimant contends, in terms of fair market value judged by the considerations of a willing buyer in the open market, he now has only approximately two thirds of the property which he had before.
The basis of the State’s contention apparently is that the damage is to be determined not on the basis of the broad language of the rights acquired, but on the actual use now being made and the use which could be made in the future provided that the right of way is only utilized for transmission of power at 345,000 volts, This contention is based upon the fact that the requirements of spacing for transmission of electric power at such voltages in the present state of the art, will not permit the utilization of a 300-foot strip for more than two such lines.
We think that this contention by the State is erroneous and it is completely answered in the case of Spinner v. State of New York (4 A D 2d 987, 988) where the court said: “ If the State wishes to limit its right under the easement to the continuance of the presently existing use or to the prospective use envisaged by its expert, it should do so by formal action, by deed, release or otherwise. In the absence of such modification, the damage must be evaluated on the basis of what the State has the right to do under the terms of the easement as appropriated (cf. Dillenbeck v. State, 193 Misc. 542, affd. 275 App. Div. 871; Robinson v. State of New York, 3 A D 2d 326).” Any prospective purchaser of claimant’s farm would necessarily recognize that the Power Authority could, whenever it deemed it necessary for the full enjoyment of its easement, completely exclude the owner from this 300-foot strip.
Nor can we accept the State’s contention that there is some limitation in the use of the word “ transmission ”. The State makes this contention in arguing that this 300-foot right of way could never be used for more than two lines of 345,000 volts and *132 they further contend that two such lines would presently care for all of the power to be produced in the Niagara Power Development and the St. Lawrence Power Development which this line ties together. But there is no such limitation written into the rights appropriated by the Power Authority. The word transmission is not limited to its technical meaning in electrical engineering as to distinguish between voltages to be carried. In general a change in a dominant tenement will not affect the right to a continued use of an appurtenant easement. (Arnold v. Fee, 148 N. Y. 214.)
We fail to find in the easement itself or in the Public Authorities Law setting forth the powers of the Power Authority, anything which limits the utilization of this easement to two 345,000 volt lines. The Power Authority has chosen to appropriate .the right to the exclusive occupancy of the land within the designated area and presumably it needs and intends to use all that it has taken. If it now objects to the consequences of its act in terms of the fair market value of the property, its remedy is to condemn less. (Railway v. Combs, 51 Ark. 324.)
The State introduced over the objection of the claimant, a great deal of expert testimony concerning studies which the State asserts establish that in subdivision developments residences can be sold adjacent to power lines with no apparent diminution of the market value of such property. On the facts of this particular case where the battleground is whether or not the easement has in terms of fair market value accomplished a severance of a dairy farm, such testimony has no relevancy to the question of value. Its relevancy is limited solely to the question of whether or not an apprehension of danger from the proximity of power lines might affect the value of this property. But here again the use for residential purposes is not analogous to use for farm purposes. There was no agreement even among the witnesses for the State as to the height of these lines above the ground and one expert frankly admitted that he was not about to reach up to those lines to measure them. Certainly the easement contains no restriction as to the height at which lines must be maintained above the ground. So even in that period in which the Power Authority may permit the owner of t.biR land to pass under the lines and farm the available land within the 300-foot strip, it has created a barrier in terms of apprehension to be realized in the utilization of equipment extending any substantial height.
The court finds some difficulty in reconciling the positions of the real estate experts who testified on behalf of the State. With only one exception all of these experts testified that the *133 land included within the 300-foot strip was damaged to 90% of its value. How there could he such a degree of damage without any severance is difficult for the court to understand.
If on the State’s hypothesis, this claimant and any prospective purchaser could anticipate the utilization of all of this property, with the exception of that actually occupied by the towers, indefinitely in the future as an integral part of the farm, how could there be that much damage to the land appropriated? Faced with this apparent contradiction and with no testimony on behalf of the State as to consequential damage, the court is left with the only valid testimony as to damage being given by the real estate expert for the claimant. The court has no rational basis for questioning the validity of that testimony.
The court therefore finds that the highest and best use of this property was for a dairy farm and that it had a value prior to the appropriation of $30,000. As a result of the appropriation the claimant suffered damage in the amount of $1,350 for the land included within the easement and consequential damage to the remaining land and buildings in the amount of $13,650.
The claimant is entitled to judgment in the amount of $15,000, with interest thereon from December 3, 1959 until the date of entry of judgment.
The claim was duly filed and it has not been assigned. The court has viewed the premises.
The appropriation is described on Map No. OL 774, Parcel No. 774, Power Authority of the State of New York, Niagara Power Project, Onondaga County, Niagara-Adirondack Tie Line. This map was filed in the Onondaga County Clerk’s office on December 3, 1959 and the court adopts the description of the appropriated property as set forth in that map, a copy of which was annexed to the claim.
The award to claimant herein is exclusive of the claims, if any, of persons other than owners of the appropriated property, their tenants, mortgagees and lienors having any right or interest in any stream, lake, watercourse, street, road, highway, or right of way or the bed thereof within the limits of the appropriated property or contiguous thereto; and is exclusive also of claims, if any, for the value of or damage to easements and appurtenant facilities for the construction, operation and maintenance of public service electric, telephone, telegraph, pipe and railroad lines.
The foregoing constitutes the written and signed decision of the court upon which judgment may be entered. The claimant and the State may file their proposed findings of fact and con *134 elusions of law within 30 days from the date of this decision, and if the same are not filed within that time they are deemed to have been waived, and if filed the court will mark the same in the usual manner.