Richard S. Heller, J.
Pursuant to section 30 of the Highway Law, as made applicable by title 1 of article 5 of the Public Authorities Law, the State of New York acquired by appropriation a permanent easement in lands owned by the claimants as deemed necessary by the Power Authority of the State of New York for the Improvement and Development of the Niagara River, as shown on Map No. OL 795-R-l, Parcel No. 798, Power Authority of the State of New York, Niagara Power Projects, Onondaga County, Niagara-Adirondack Tie Line. This map was filed in the office of the Onondaga County Clerk on April 19,1960, and the court adopts the description of the appropriated property as set forth in that map, a copy of which is annexed to the claim.
This appropriation of 8.38± acres was taken from approximately 74.78± acres of land owned by the claimants. It consisted of a strip of land 1305± feet on the south, 329.4± feet on the west, 1,149.8± feet on the north and an irregular 344.3± feet on the east. This strip when joining the appropriations on the west and east of adjoining property owners formed a continuous 300± feet used at the time of trial for carrying transmission lines for electricity on large steel towers.
After the appropriation about 16± acres of vacant land was north of the north line of the taken area with 48.8± acres lying south of the easement. Located on the southerly remaining land was claimants ’ residence and garage and a tenant house with other out buildings.
Claimants ’ land had 400± feet of frontage on Smokey Hollow Road, a paved highway running north from Route 48 which was the main highway from Syracuse to Fulton. Claimants’ land was 1.2 miles north of the intersection of Route 48 and was .8 of a mile north of the village limits of Baldwinsville. There had been considerable subdivision development near Baldwinsville and some evidence of building on the Smokey HoIIoav Road. The property had gas, electric and phone services.
Claimants had never farmed their land since the purchase in 1945, having built a new home and remodeled the tenant house. Their intention of subdividing their property did not go so far as to preparing plans for the tract. Their belief that it was suitable for subdivision is borne out by the increased population in the Town of Lysander, the development of lands near their property and the sale of lots near them on the Smokey Hollow Road. The utilities available, the nearness of school and the *404 Village of Baldwinsville are other factors which lead the court to find that the best available use of claimants ’ land at the time of the appropriation was for subdivision development.
The easement taken is as follows: “A permanent easement to be exercised in, on, over, under, thru and across the hereinafter described property for the purpose of constructing, erecting, reconstructing, replacing, relocating, operating, maintaining, repairing and removing line or lines for transmission of electricity and messages by means of electricity, including, but not limited to poles, towers, cross arms, wires, cables, underground conduits, counterpoise, guys, stubs, anchors, brace poles, lightening arrestors, and other appurtenant or supporting apparatus or structures; together with the right at all times to enter upon the premises to cut, trim, move, demolish and remove any and all brush, trees, buildings or structures, or other obstructions on said property; also the right of ingress, egress and regress at all times over, upon and across said property; and every right, privilege and authority which now or hereafter may be deemed necessary by the Power Authority of the State of New York, its legal representatives or successors for the complete enjoyment of the aforementioned easement.”
The restrictions to the public and the reservations to the owners are as follows: “Such permanent easement shall not limit, restrict or interfere with any existing railroad system or public utility corporation facilities and shall not limit or restrict the jurisdiction of any municipality to maintain, repair or reconstruct any existing street, road or highway within the limits of the above described property, provided no change of grade or alignment of such railroad system, public utility facilities, street, road or highway shall be made or constructed which will interfere with or prevent the user and exercise by Power Authority of the State of New York, its legal representatives, successors or assigns of the right hereinabove provided. Reserving, however, to the owner of the above described property and his successors in interest, the right and privilege of using such property, provided the exercise of such right and privilege does not interfere with or prevent the user and exercise of the permanent easement and rights hereinabove described. Notwithstanding the right and privilege herein reserved to the owner and his successors in interest to use such property, no building or other structures shall be erected, maintained or suffered upon the land hereinabove described without the written consent of the Power Authority of the State of New York.”
It is the opinion of the court that this easement is in fact a total taking of the appropriated land and that it severs the *405 land to the north from the land remaining on the south. (Spinner v. State of New York, 4 A D 2d 987; Clark v. State of New York, 33 Misc 2d 129.)
Thus we have direct damages for the appropriation plus consequential damages for the severed portion. The question of consequential damages to the land lying south of the easement presents a more complex problem.
The State contends that there is no consequential damage, yet all of its experts agree that there is a buyers resistance to property adjoining a high power transmission line. Buyers resistance could come from one of several reasons, namely, the unsightly towers, fear of transmission wires, thought of radio and television interference and worry over children climbing the towers. The witnesses vary in the degree of this resistance but do concede that it is present, yet they explain their conclusions of no consequential damage on what they term ‘ ‘ the depth of the market ”. In other words they feel that eventually someone will be found who has no feeling adverse to the presence of the power line.
There can be little doubt that people would build up to the easement line and that substantial prices would be paid for the land but the court is not convinced that a lot next to transmission lines is as readily acceptable to the average home owner as a lot set apart by a buffer zone.
It is the opinion of the court that the owner would have to wait some period of time to fully develop the land adjacent to the easement. On this premise the court finds that there is consequential damage to the land lying to the south of the appropriated area. There is no consequential damage to the buildings.
Each taking will present different facts that will spell out the degree of consequential damage but we are concerned here with the present appropriation. Claimants’ expert has based his valuation of the property on the theory that this land will be developed in large acre lots. Thus the consequential damage will be kept at a minimum because any builder can select a home site considerably removed from the power line and the buyer resistance is lowered.
It is the opinion of the court that the fair and reasonable market value of claimants ’ land prior to the appropriation was $43,750, and that the fair and reasonable market value after the appropriation was $36,900. Claimants have been damaged in the sum of $6,850 and are entitled to an award in that amount with interest from April 19, 1960 to the date of entry of judgment.
*406 The claim was duly filed and has not been assigned. The court has viewed the property.
Certain evidence was received over objection concerning the use of the easement area in farm areas and industrial plots. The only part that is relevant to this case is that portion which indicates that use in the easement area under the present conditions is possible.
The award to claimants herein is exclusive of the claims, if any, of persons other than owners of the appropriated property, their tenants, mortgagees and lienors having any right or interest in any stream, lake, watercourse, street, road, highway, or right of way or the bed thereof within the limits of the appropriated property or contiguous thereto; and is exclusive also of claims, if any, for the value of or damage to easements and appurtenant facilities for the construction, operation and maintenance of public service electric, telephone, telegraph, pipe and railroad lines.
The foregoing constitutes the written and signed decision of the court upon which judgment may be entered. The claimant and the State may file their proposed findings of fact and conclusions of law within 30 days from the date of this decision, and if the same are not filed within that time they are deemed to have been waived, and if filed the court will mark the same in the usual manner.