Richard S. Heller, J.
The Power Authority of the State of New York and the New York State Department of Public Works, pursuant to section 30 of the Highway Law, as made applicable by title 1 of article 5 of the Public Authorities Law, appropriated land owned by the claimant in the Town of Lysander, Onondaga *135 County, as shown on Map No. OL 800, Parcel No. 804, Power Authority of the State of New York, Niagara Power Project, Onondaga County, Niagara-Adirondack Tie Line. The description of the land taken is contained in the map filed in the Onondaga County Clerk’s office on February 2, 1960 and annexed to the claim and the court adopts such description as accurate.
The appropriation was for a permanent easement of 78.86± acres and consists of a strip of land 300 feet wide which runs west to east across claimant’s property for more than two miles. Included in the taking is frontage on the east side of Sixty Road, on both sides of Chestnut Ridge Road, the south side of Carpenter Road and both sides of the West River Road as well as frontage on the Barge Canal. After the appropriation approximately one third of the remaining land lies north of the taking and two thirds lies to the south.
In 1952 the claimant herein started to buy land in the Town of Lysander and by July 30, 1953 it had title to approximately 2,500 acres which it intended to hold for future industrial expansion. This acreage was bounded on the west by Sixty Road, on the south by Route 31, on the east by West River Road and Seneca River and on the north by Potter Road. Chestnut Ridge Road ran from Route 31 north to Potter Road and was located about midway between the east and west boundaries. Other roads were located on the acreage so that in all there was approximately 15 miles of road frontage available to the plot. In addition, there was more than 4,121 feet of frontage on the Seneca River, which is also the Barge Canal in this area.
Claimant’s land was located one mile east of the Village of Baldwinsville and was 12 to 14 miles northwest of the city line of Syracuse. It was served on Route 31 with electricity, gas and potable water. Prior to the purchase by the claimant, the previous owners had obtained water from the Seneca River for industrial purposes and there is nothing here that contradicts the possibility of such water use by the claimant. The land was zoned industrial in 1957 for about 2,000 acres, the remainder is zoned agricultural but again the proof shows that in all probability the remaining 400 acres could be changed to industrial. The land is approximately four miles to the New York State Thruway by one route and three and one-half miles to the Thruway by a different route to a different interchange. The plot is served by a railroad siding and the Barge Canal. An airport could be constructed without too much inconvenience to the remaining land.
The industrial expansion in Onondaga County since the advent of the Thruway with its five interchanges has been first to the *136 east, then north, and now to the west and northwest of Syracuse. Upon the proof presented with industrial plots under development east and south of claimant’s land and the natural growth toward this section, it is the finding of the court that the best available use of claimant’s land at the time of appropriation was for industrial purposes.
The easement taken is as follows: “ A permanent easement to be exercised in, on, over, under, thru and across the hereinafter described property for the purpose of constructing, erecting, reconstructing, replacing, relocating, operating, maintaining, repairing and removing line or lines for transmission of electricity and messages by means of electricity, including, but not limited to poles, towers, cross arms, wires, cables, underground conduits, counterpoise, guys, stubs, anchors, brace poles, lightning arrestors, and other appurtenant or supporting apparatus or structures; together with the right at all times to enter upon the premises to cut, trim, move, demolish and remove any and all brush, trees, buildings or structures, or other obstructions on said property; also the right of ingress, egress and regress at all times over, upon and across said property; and every right, privilege and authority which now or hereafter may be deemed necessary by the Power Authority of the State of New York, its legal representatives or successors for the complete enjoyment of the aforementioned easement.”
The restrictions to the public and the reservations to the owners are as follows: ‘ ‘ Such permanent easement shall not limit, restrict or interfere with any existing railroad system or public utility corporation facilities and shall not limit or restrict the jurisdiction of any municipality to maintain, repair or reconstruct any existing street, road or highway within the limits of the above described property, provided no change of grade or alignment of such railroad system, public utility facilities, street, road or highway shall be made or constructed which will interfere with or prevent the user and exercise by Power Authority of the State of New York, its legal representatives, successors or assigns of the right hereinabove provided. Reserving, however, to the owner of the above described property and his successors in interest, the right and privilege of using such property, provided the exercise of such right and privilege does not interfere with or prevent the user and exercise of the permanent easement and rights hereinabove described. Notwithstanding the right and privilege herein reserved to the owner and his successors in interest to use such property, no building or other structures shall be erected, maintained or suffered upon the land hereinabove described without the *137 written consent of the Power Authority of the State of New York.”
The appropriation amounts to the taking of the fee. The only thing left to claimant is the right to pay taxes on the appropriated land and some dubious rights of a temporary nature. (Spinner v. State of New York, 4 A D 2d 987; Clark v. State of New York, 33 Misc 2d 129.)
The court finds that the claimant herein has suffered consequential damages as a result of the appropriation. It is precluded from the full use of the property in plotting its future development for its most profitable use. (Matter of City of New York [Inwood Hill Park], 230 App. Div. 41, affd. 256 N. Y. 556.) It is denied suitable access from the north to the south portions of its property except by established roads and routes which interfere with proper development. The court is mindful that because the plot is so large and has escape roads and routes that the claimant can in all probability overcome some of the problems caused by the appropriation.
The court finds that the fair and reasonable market value of claimant’s land prior to the appropriation was $1,750,000 and that the fair and reasonable market value of claimant’s land after the appropriation was $1,677,000. Claimant has been damaged in the sum of $73,000 and is entitled to an award in that amount with interest from February 2, 1960 to the date of entry of judgment.
The claim was duly filed on July 2, 1960 and has not been assigned. The court has viewed the property.
Certain evidence given at a previous trial relating to farm properties and subdivision developments was stipulated into evidence but with an objection by claimant. The purpose was to expedite the trial since all of this had been received under objection in the trial of the claim of Clark v. State of New York (33 Misc 2d 129). The court accepts as relevant only the fact that at the time of trial, certain areas under the easement were being used by the owner.
The award to claimant herein is exclusive of the claims, if any, (1) of persons other than the said claimant of the appropriated property, its tenants, mortgagees, and lienors having any right or interest in any stream, lake, watercourse, street, road, highway, or right of way or the bed thereof, within the appropriated area or contiguous thereto; (2) for the value of or damage to easements and appurtenant facilities for the construction, operation and maintenance of public service electric telephone, telegraph, pipe and railroad lines; and (3) for the value of or damage to easements, if any, of Phoenix *138 Fuel, Light and Water Company, and Fulton Phoenix Natural Gas Company, or either of them, their respective tenants, mortgagees, lienors, legal representatives, successors and assigns.
The foregoing constitutes the written and signed decision of the court upon which judgment may be entered. The claimant and the State may file their proposed findings of fact and conclusions of law within 30 days from the date of this decision, and if the same are not filed within that time they are deemed to have been waived, and if filed the court will mark the same in the usual manner.