ERNEST L. CLARK, Respondent, v. STATE OF NEW YORK et al., Appellants. (Claim No. 37203.)

FRANK P. THOM et al., Respondents-Appellants, v. STATE OF NEW YORK et al., Appellants-Respondents. (Claim No. 37940.)

FIRST NATIONAL CITY TRUST COMPANY, as Trustee for JOHN J. ASTOR and Others, Respondent-Appellant, v. STATE OF NEW YORK et al., Appellants-Respondents. (Claim No. 37993.)

Fourth Department, January 9, 1964.

*Louis J. Lefkowitz, Attorney-General (Julius L. Sackman* of counsel), for State of New York, appellant.

*Thomas F. Moore, Jr. (Edward L. Ryan* and *Lewis R. Bennett* of counsel), for Power Authority, appellant.

*Francis Preston (Louis Young* of counsel), for respondent.

*Melvin & Melvin (Louis Young* of counsel), for Frank P. Thom and another, respondents-appellants.

Bastow, J. The appellant, Power Authority of the State of New York (herein " Authority "), as a part of its Niagara Power Project has constructed a transmission line for some 200 miles from Niagara Falls to Utica. The towers upon which the lines are strung are an average of 790 feet apart and the wires or cables are a minimum of 32 feet above the ground. In the construction of this line easements were appropriated from some 894 owners. Settlements have been effected with about 80% of these owners but the claims of approximately 180 owners are pending. These three cases were selected and tried as " test " cases. (See 35 Misc 2d 577.)

The trial court rendered separate opinions in each case constituting the decisions (33 Misc 2d 129, 134, 402). In denying motions by the Authority to vacate these decisions it handed down a single opinion in all three cases (35 Misc 2d 577). The State and the Authority appeal from the judgments entered upon the three decisions and from an order denying motions to vacate the decisions and permit the submission of additional proof. Claimants, Thom and First National City Trust Company, as trustee for John Jacob Astor (herein "Astor Trust"), appeal from the judgments on the ground of inadequacy.

While subsidiary questions are presented, all appeals center upon the crucial issue as to what amounts, if any, should be awarded for consequential damages. Claimants assert the right to substantial consequential damages based upon the broad language in the easements. Each was in identical language and appropriated an easement " on, over, under, thru and across " the property for the purpose, among other things, " of constructing, erecting, reconstructing, replacing, relocating, operating, maintaining, repairing and removing line or lines " including but not limited to poles, towers and various other enumerated appurtenances. In addition, the Authority had the right to enter upon the premises " to cut, trim, move, demolish, and remove any and all brush, trees, buildings or structures, or other obstructions on said property " together with the right of ingress and egress. Lastly, there was appropriated " every right, privilege and authority which now or hereafter may be deemed necessary by the [Authority], its legal representatives or successors for the complete enjoyment of the aforementioned easement." There was reserved to the owner the right to use the property provided it did not interfere with the easement rights. Notwithstanding such right, however, no building could be erected or maintained on the land without the written consent of the Authority.

## Clark Property

This consists of an 111-acre farm some 6 miles from the Village of Baldwinsville in Onondaga County. There is no dispute that the highest and best use is as a dairy farm. The easement area covered 12.16 acres with a width of 300 feet for a distance of approximately 1,766 feet. Only two towers have been erected but the Authority may eventually construct an additional transmission line. The easement traverses the rear portion of the farm leaving 37 acres on the north or rear portion and 62 acres on the south side toward the highway where the farm buildings are located. There is no proof or claim of

damage, either direct or consequential, to the buildings. Claimant continues to use the land under the towers within the easement, cultivating wheat thereon.

The proof as to damages may be more graphically set forth in tabular form as follows:

|  | Land and Buildings | | Direct or Easement Damage | Conse-quential Damage | Total Damage |
|  | Before Value | After Value | | | |
|---|---|---|---|---|---|
| Claimant's expert (Maloney)...... | $30,000 | $15,000 | $1,350 | $13,650 | $15,000 |
| Authority's experts (Clark & Roney) | 26,990 | 25,895 | 1,095 | 0 | 1,095 |
| Finding of Trial Court............ | 30,000 | 15,000 | 1,350 | 13,650 | 15,000 |

Thus, it can be seen, there was little dispute as to the values of the whole farm or of the appropriated easement. The witnesses for claimants testified that the easement constituted an entire taking of the 12 acres covered by the easement. The Authority's witnesses expressed the opinion that the land subject to the easement was damaged to the extent of 90%. Actually the difference is immaterial as the Authority in this claim does not dispute the award of full value as found by the court for the land over which the easement was taken.

The real dispute centers upon consequential damage. The witnesses for the Authority found no damage. Claimant's witnesses fixed the consequential damage in the sum of $13,650 and the trial court so found. The wide variance is caused by the manner in which the respective experts construed the easement provisions and their potential for future damage. There is no substantial proof that at present the easement causes any indirect or consequential damage to claimant. His expert witness testified that any interference would be "very slight" but "due to the phraseology of this easement" claimant in the future might be denied any access to the 37 acres to the north of the easement and that portion would be landlocked. The trial court in substance adopted this view. There can be no disagreement with its statement (see 33 Misc 2d 129, 131) that under the broad provisions in the easement the possibility existed that at some future time the Authority under its reserved power might completely exclude the then fee owner from the 300-foot strip. We will return to the subject of consequential damage after reciting the facts covering the other two claims.

### Thom Property

This 75-acre farm property was purchased by claimants in 1945 for $2,000. It is an irregular shaped tract about one mile from the Village of Baldwinsville in Onondaga County. Thom, who is a carpenter, fixed up the tenant house and rented it.

Subsequently he built a new home on a corner of the land at a cost of $28,000. The tracks of the Delaware, Lackawanna & Western Railroad running in a northeast-southwest direction border the tract on the east. The 300-foot transmission line traverses the rear portion of the land leaving 15.7 acres on the northerly side and 48.8 acres on the southerly side. The easement covers approximately 8 acres and there are 2 towers thereon.

A sharp issue was presented as to the highest and best use of the land. Claimants' expert expressed the opinion (and the trial court so found) that such use was for future residential development. The witnesses for the Authority were of the opinion that its best available use was for agricultural purposes. In our opinion the finding of the trial court was against the weight of the credible evidence. Claimants' principal reliance on such future use of the land is the fact that there are other subdivisions about a mile from their property. In view of our ultimate disposition of these claims it well may be that this issue is not of great importance. Assuming that the land had a use as a potential future subdivision development, claimants submitted no substantial proof that the transmission line would adversely affect such use. No subdivision map had been prepared and in any event no proof was presented that purchasers of lots were reluctant to buy in the vicinity of a transmission line. The Authority on the other hand produced evidence that such lines adjoining homes had no substantial adverse effect on market value.

We present in tabular form the opinions of the experts and findings of the trial court upon the subject of damage.

|  | Land and Buildings Before Value | After Value | Direct or Easement Damage | Consequential Damage | Total Damage |
|---|---|---|---|---|---|
| Claimants' expert (Maloney) | $50,000 | $41,000 | $2,400 | $6,700 | $9,000 |
| Authority's expert (Roney) | 32,678 | 32,035 | 643 | 0 | 643 |
| Finding of Trial Court | 43,750 | 36,900 | ..... | ...... | 6,850 |

While the trial court made no findings as to the dollar amounts of direct and consequential damages it was stated in its decision " that this easement is in fact a total taking of the appropriated land and that it severs land to the north from the land remaining on the south." The court went on to find consequential damage to the land south of the line but no such damage to the buildings (33 Misc 2d 402, 404-405). If this is correctly understood it must have been found that the 15 acres north of the line are or in the future might be landlocked. The sum of $2,400 apparently was awarded for lands taken for the easement and the balance of $4,450 allowed for consequential damage.

In the light of what is subsequently written on the subject of consequential damages we are unable to agree that the easement rights appropriated constituted a 100% taking of the lands embraced therein. The proof is to the contrary. More realistic is the testimony of the Authority's witnesses that this constituted a 90% appropriation. We fix claimants' direct damage in the sum of $2,160 (90% of $2,400 — the full value as fixed by claimants' expert of the land within the easement). We reserve for later discussion the subject of consequential damage.

*Astor Trust Property*

The trustee owns 2,495 acres in the Town of Lysander in Onondaga County. Some 2,000 acres, formerly used by the United States in the manufacture of munitions, were acquired in 1952 for $325,000. Subsequent acquisitions brought the total purchase price of the entire tract to $401,000. The property is zoned for industrial use and concededly that is its highest and best use. The tract is bounded on the south by Highway Route 31 and on the east by the Seneca River. Three other highways cross portions of the property — two in a north-south direction and one in an east-west. The easement appropriation embraced 78.86 acres and ran in an east-west direction across the tract with one third of the remaining land north of the taking and two thirds thereof south.

The opinions of the experts and findings of the trial court are as follows:

| | Land and Buildings | | Direct or | Conse- | |
| | Before Value | After Value | Easement Damage | quential Damage | Total Damage |
| --- | --- | --- | --- | --- | --- |
| Claimant's experts (Maloney & Sehr)........ | $6,488,250* | $6,240,750* | $198,500 | $50,000 | $247,500 |
| Authority's expert (Hopkins)............... | 662,340** | 647,707** | 14,700 | 0 | 14,700 |
| Authority's expert (Clark) | 745,438** | 733,373** | 12,065 | 0 | 12,065 |
| Finding of the Court.... | 1,750,000** | 1,677,000** | ...... | ...... | 73,000 |

* Land and buildings. These witnesses did not break down valuation figures between land and buildings. Most of these values, however, must have been allocated to land as the 2,500 acres were appraised by these witnesses at approximately $2,500 per acre.
** Land only.

Again the trial court did not allocate the found amount of total damage between direct and consequential. It found that "The appropriation amounts to the taking of the fee. The only thing left to claimant is the right to pay taxes on the appropriated land and some dubious rights of a temporary nature." (33 Misc 2d 134, 137.) It is apparent, as a matter of computa-

tion, that the trial court valued the 2,500 acres at $700 an acre to arrive at a before value of $1,750,000. We concur in that finding. The value placed thereon by claimant's experts of $2,500 an acre is unrealistic in the light of the proof. Again by our computation the trial court must have found direct damage of $54,600 (78 acres at $700 per acre) and consequential damage of $18,400. We find the direct damage to be $50,000 which represents approximately 90% of the total value (as found by the trial court) of the acreage embraced within the easement.

We turn to the subject of consequential damages in all claims. Upon the trials, as has been stated, the most controversial issue was the impact of the admittedly broad provisions of the easement upon the future potential use of the remaining lands. The trial court found that the taking of the lands within the easements constituted a complete appropriation. It found in substance that this constituted a severance with the possibility that the Authority in the future might assert rights that would seriously damage claimants or their successors. Thus, in the *Clark* case the court wrote that "Any prospective purchaser of claimant's farm would necessarily recognize that the Power Authority could, whenever it deemed it necessary for the full enjoyment of its easement, completely exclude the owner from this 300-foot strip." (33 Misc 2d 129, 131.)

After the cases had been decided, the Authority made a formal motion for a new trial or in the alternative for an order directing the taking of additional testimony and for new and modified decisions. Such application was based upon the procedure followed in *Spinner* v. *State of New York* (4 A D 2d 987). In an affidavit submitted by its general counsel the Authority offered, in the event of such new hearings, "by formal action to make it palpably and unquestionably clear that the owners of the fee are entitled to the absolute right to cross the lands covered by the easements for purposes of ingress and egress, including the right to build roads across the property subject to the easements and to have perpetual rights to use such roads."

This motion was vigorously opposed by claimants and the motion in each case was denied with a formal opinion (35 Misc 2d 577). The trial court reasoned that the Authority during the trial could have so offered to limit its easement. It was pointed out that in the remaining untried claims the Authority could by unilateral action so limit its easements but concluded that inasmuch as no formal instrument of modification of the easement had been presented it could not be determined that claimants' consequential damages had been diminished.

We do not concur in this narrow view of the problem presented. While the easements contain some broad language, there is not in this record a bit of proof that the Authority presently or in the future intends to exclude claimants from the free and unrestricted use of the lands embraced within the easements. Claimants by the device of having real estate experts construe a legal document contend that not only have the lands within the easement been appropriated but that their remaining tracts have been severed with resulting landlocking of some parcels and other serious potential future consequential damage that may not be presently envisioned.

Our recent decision in *Jafco Realty Corp.* v. *State of New York* (18 A D 2d 74, 75) appears to present a solution. There claimant's access to its property from a public street was by virtue of an easement over lands owned by the City of Buffalo. The State appropriated the fee of the strip of land and claimant's easement. The taking, however, reserved to claimant the rights granted to it by the city "Providing the exercise of these rights, does not, in the opinion of [described public officials] * * * acting in the best interests of the [State], interfere in any way with the Public use hereinbefore described." Claimant received a substantial award upon the reasoning that access in the future might be terminated and claimant would have no further basis for relief. In reversing we held that this provisio did not contemplate a present taking but related only to a possible future use. We made an express finding that any such future use that deprived claimant of access would constitute a *de facto* appropriation for which claimant might then be entitled to compensation.

Here we have disagreement between parties as to the construction and meaning of a written instrument. The Authority, as a political subdivision of the State (Public Authorities Law, § 1002), in a judicial proceeding has made a solemn representation that it is willing to limit its rights under the easements to define and limit the present and future use to the extent that the fee owners are entitled not only to their stated right to use the land within the easement but the right in perpetuity to cross the lands for purposes of ingress and egress, including the right to build roads across the property and to have perpetual rights to use such roads. In *Jafco* (*supra*, pp. 75–76) we wrote that an easement is "to be construed in the light of its apparent object and the extent of the limitation imposed on claimant's use of its [lands] is to be determined by the language used and upon consideration of the necessity to be supplied and no greater

limitation will be placed on what claimant may do in the exercise of [the use of its lands] than the public use requires."

We do not see the procedural difficulties that the trial court found insurmountable (35 Misc 2d 577, 580). In the event the present offer of appellants is accepted by this court and implemented in this litigation by appropriate findings of fact, the Authority and the State would be effectively prevented by the doctrine of equitable estoppel from making any inconsistent claim or taking a conflicting position in any subsequent proceeding to the prejudice of claimants. (21 N. Y. Jur., Estoppel, §§ 54–56.) (See, also, *Matter of Martin* v. *C. A. Productions Co.,* 8 N Y 2d 226, 231.) Under proper circumstances a sovereign State, like an individual, may be so estopped. (*Whitehall Water Power Co.* v. *Atlantic, Gulf & Pacific Co.,* 160 App. Div. 208, 211, affd. 221 N. Y. 42.) (See, also, *People* v. *Stephens,* 71 N. Y. 527, 560.)

In the light of the foregoing, appropriate findings should be made limiting the easement and granting to the owners of the fee and their successors the right to cross the lands covered by the respective easements for purposes of ingress and egress, including the right to build roads across the property embraced in the easements and to have the perpetual rights to use such roads. Further findings will be made that, if the Authority or the State by some affirmative act terminates or interferes with such found rights, such action would constitute a *de facto* appropriation for which any claimant hereafter might be entitled to compensation.

Upon these findings we conclude that none of the claimants has sustained any consequential damage. The judgments should be modified by reducing the amounts thereof as follows: Clark to $1,350; Thom to $2,160, and Astor Trust to $50,000. As so modified the judgments should be affirmed.

WILLIAMS, P. J., HENRY and NOONAN, JJ., concur.

Judgments unanimously modified on the law and facts in accordance with the opinion and as so modified affirmed, without costs of these appeals to any party. The appeal from the order is dismissed as academic. Certain findings of fact disapproved and reversed and new findings and conclusion of law made.