Henry W. Lengyel, J.
This is a claim for the appropriation of claimant’s land pursuant to section 30 of the Highway Law, as made applicable by title 1 of article 5 of the Public Authorities Law, which proceeding is described as Power Authority of the State of New York, Niagara Power Project, Oneida County, Niagara-Adirondack Tie Line, Town of Whitestown, Map No. OWH 1134, Parcel No. 1136. The description of the interest appropriated is beaded therein as £ 1 Permanent Easement for Power Transmission Line” and then provides: 11 A permanent easement to be exercised in, on, over, under, thru and across the hereinafter described property for the purpose of constructing, erecting, reconstructing, replacing, relocating, operating, maintaining, repairing and removing line or lines for transmission of electricity and messages by means of electricity, including, but not limited to poles, towers, cross arms, wires, cables, underground conduits, counterpoise, guys, stubs, anchors, brace poles, lightning arrestors, and other appurtenant or supporting apparatus or structures; together with *680 the right at all times to enter upon the premises to cut, trim, move, demolish and remove any and all brush, trees, buildings or structures, or other obstructions on said property; also the right of ingress, egress and regress at all times, over, upon and across said property; and every right, privilege and authority which now or hereafter may be deemed necessary by the Power Authority of the State of New York, its legal representatives or successors for the complete enjoyment of the aforementioned easement.” So far as it affects the property at the time of the appropriation, this description of rights also provided: “ Such permanent easement shall not limit, restrict or interfere with any existing railroad system or public utility corporation facilities and shall not limit or restrict the jurisdiction of any municipality to maintain, repair or reconstruct any existing street, road or highway within the limits of the above described property, provided no change of grade or alignment of such railroad system, public utility facilities, street, road or highway shall be made or constructed which will interfere with or prevent the user and exercise by Power Authority of the State of New York, its legal representatives, successors or assigns of the right hereinabove provided. Eeserving, however, to the owner of the above described property and his successors in interest, the right and privilege of using such property, provided the exercise of such right and privilege does not interfere with or prevent the user and exercise of the permanent easement and rights hereinabove described. Notwithstanding the right and privilege herein reserved to the owner and his successors in interest to use such property, no building or other structures shall be erected, maintained or suffered upon the land hereinabove described without the written consent of the Power Authority of the State of New York.”
The aforesaid map and description were filed in the office of the Secretary of State on the 6th day of April, 1960; in the office of the County Clerk of Oneida County on the 10th day of August, 1960, and personal service was made on the claimant on the 19th day of August, 1960.
The claim was filed with the Clerk of the Court of Claims and the Attorney-General on the 25th day of May, 1961, and has not been assigned or submitted to any other court or tribunal for audit or determination.
Before the appropriation the property consisted of 92 ± acres in the Town of Whitestown, Oneida County, New York, as described in a deed dated September 11, 1956, from Winifred Easier and Ernest Easier, et al., grantors, to Eloise Olin, *681 grantee, recorded in the Oneida County Clerk’s office on the 12th day of September, 1956, in Liber 1526 of Deeds at page 222. The easterly boundary of said property is Oriskany Creek and the property was bisected at its easterly end, approximately 300 feet westerly from Oriskany Creek, by Judd Road giving the property approximately 1,000 feet frontage on the east side of Judd Road and 3,000 feet frontage on the west side of Judd Road. The property contained the following improvements at the time of the appropriation: (a) Two-family frame dwelling on the westerly side of Judd Road with two-car garage at rear, (b) One-story concrete block dwelling built on a slab with attached garage on easterly side of Judd Road, (c) Two-story frame barn, with lean-to addition and cement milkhouse on easterly side of Judd Road.
The subject proceeding appropriated approximately 15.17 ± acres of claimant’s property by imposition of the aforesaid permanent easement and comprised the following area: A strip of land 300 feet wide and approximately 2,155 feet long running entirely across claimant’s property in an east-west direction dividing claimant’s property almost in half, leaving 40 ± acres north of the appropriation and 30 ± acres south of the appropriation. The improvements aforesaid were all outside the appropriated area. The court adopts the description of the appropriated property as shown on the map and description filed in the Oneida County Clerk’s office, a copy of which is attached to the claim and same is incorporated herein by reference.
That subsequent to the filing of the aforesaid appropriation map the Power Authority of the State of New York (hereinafter the Authority) filed a clarification description and map in the office of the Department of State on the 28th day of August, 1963; in the County Clerk’s office of Oneida County on the 15th day of October, 1963; and service of same wras made upon the claimant and her attorney on the 15th day of October, 1963. The description and wording of the permanent easement in the said clarification description and map is identical with that contained in the original appropriation map aforesaid. However, there was added to such easement the following statement:
“ It is not the intention of the language used in the above described appropriation map to deprive the owners of the underlying fee, their successors and assigns, of the irrevocable and absolute right to cross the property subject to the easement appropriated by the State on behalf of the Power Author *682 ity of the State of New York or the right to build roads for the purpose.
“ This is a Clarification Description and Map executed and filed in accordance with resolution adopted by the Trustees of Power Authority of the State of New York on October 29, 1962.”
This formal notice of intention was accepted by the court pursuant to the case of Spinner v. State of New York (4 A D 2d 987, 988 [3d Dept., 1957]) wherein that court stated: “If the State wishes to limit its rights under the easement to the continuance of the presently existing use or to the prospective use envisaged by its expert, it should do so by formal action, by deed, release or otherwise. In the absence of such modification, the damage must be evaluated on the basis of what the State has the right to do under the terms of the easement as appropriated (cf. Dillenbeck v. State of New York, 193 Misc. 542, affd. 275 App. Div. 871; Robinson v. State of New York, 3 A D 2d 326).” The court also considered and agreed with the dicta in the decision of Clark v. State of New York (35 Misc 2d 577 [Court of Claims, 1962]), wherein Judge Heller, in refusing to vacate decisions in the cases of Clark v. State of New York (33 Misc 2d 129 [Court of Claims, 1962] ; First Nat. City Trust Co. v. State of New York, 33 Misc 2d 134 [Court of Claims, 1962]) and Thom v. State of New York (33 Misc 2d 402 [Court of Claims, 1962]), stated at page 579 that: “ The State at any time during the trial could have submitted a limitation on the easement. It is believed that this would be in line with the reasoning as set forth in Nichols 1, Eminent Domain (vol. 3, § 8.2, pp. 12-13) ”
And at page 580 that “ The record in each case indicates on many occasions that the State intended to rely on the wording of the easement and upon the statement of counsel that only two power lines would ever be erected on the right of way.
‘ ‘ The offer of the State to limit the easement, if not allowed in these cases, could be available to the State in the future.”
The State further offered at the beginning of the trial another resolution of the Authority which was adopted on the same date as the aforesaid formal notice of intention. Said resolution reads as follows: * ‘ That in future trials of cases involving transmission line easements appropriated between Niagara Falls and Utica, counsel is authorized to offer each claimant upon request a document executed by the General Manager on behalf of the Authority limiting the use to which the property subject to the easement may be put to transmission line uses *683 of the type to which it is presently being put or is intended to be put with transmission towers on any single circuit a minimum of 500 feet apart and wires a minimum of 33 feet above the ground.” The court refused to allow said resolution into evidence for it did not consider that it came within the requirement of the Spinner case (4 A D 2d 987, supra) for limitation by ‘‘ formal action”. Also, as said resolution was adopted on the same date as the aforesaid notice of intention, it appeared to this court that in the interest of an orderly progression of the trial of this claim and also so that claimant’s counsel would have all so-called offers of limitation of easement clearly and concisely before them, that the Authority should have filed said resolution as part of its clarification description and map. However, prior to the completion of the trial of this case, the Appellate Division, Fourth Department, on January 9, 1964, handed down its opinion in the cases of Clark v. State of New York; Thom v. State of New York and First Nat. City Trust Co. v. State of New York (20 A D 2d 182). These three Court of Claims eases involved, as does the instant case, the transmission line which has been constructed by the Authority from Niagara Falls to Utica. There are approximately 180 claims pending as a result of the construction of this line and imposition of the aforesaid power easement. These three cases were selected and tried as “ test ” cases. (See 35 Misc 2d 577, supra.) The Appellate Division opinion by Justice Bastow, stated (20 A D 2d 182, 189): “ The Authority, as a political subdivision of the State (Public Authorities Law, § 1002), in a judicial proceeding has made a solemn representation that it is willing to limit its rights under the easements to define and limit the present and future use to the extent that the fee owners are entitled not only to their stated right to use the land within the easement but the right in perpetuity to cross the lands for the purposes of ingress and egress, including the right to build roads across the property and to have perpetual rights to use such roads. In Jafco [Realty Corp. v. State of New York, 18 A D 2d 74], 75-76 we wrote that an easement is ‘ to be construed in the light of its apparent object and the extent of the limitation imposed on claimant’s use of its [lands] is to be determined by the language used and upon consideration of the necessity to be supplied and no greater limitation will be placed on what claimant may do in the exercise of [the use of its lands] than the public use requires. ’ * * # In the event the present offer of appellants is accepted by this court and implemented *684 in this litigation by appropriate findings of fact, the Authority and the State would be effectively prevented by the doctrine of equitable estoppel from making any inconsistent claim or taking a conflicting position in any subsequent proceeding to the prejudice of claimants. (21 N. Y. Jur., Estoppel, §§ 5U56.) (See, also, Matter of Martin v. C. A. Productions Co., 8 N Y 2d 226, 231.) Under proper circumstances, a sovereign State, like an individual, may be so estopped”. Under the above language, this court accepted this additional offer of limitation by the Authority and same was allowed into evidence prior to the close of the trial.
It would seem that the State could have initially drawn the power easement in question in such manner as to obviate the necessity for additional resolutions and clarification maps. The court is concerned with easements which do not make as clear as possible to claimants the extent of appropriation intended. In Clark v. State of New York (35 Misc 2d 577, 579, supra) the position of the court was stated by Judge Heller : ‘ ‘ The court feels that the warning issued in the Spinner case was in fact an admonition to the State that in the future its easements should state the exact use of the appropriation. The court does not feel that the Spinner case is an automatic blank check to reverse every case where the State has taken more than it needed.” There is certainly a sufficiency of litigation revolving about clear-cut appropriations and the court is greatly concerned about the proliferation of litigation that could be caused by careless and overreaching draftsmanship. Certainly, claimant’s attorneys are entitled to know what is involved- in a case as it is prepared for trial.
In Clark v. State of New York (20 A D 2d 182, 190, supra) it was held that: “ In the light of the foregoing, appropriate findings should be made limiting the easement and granting to the owners of the fee and their successors the right to cross the lands covered by the respective easements for purposes of ingress and egress, including the right to build roads across the property embraced in the easements and to have the perpetual rights to use such roads. Further findings will be made that, if the Authority or the State by some affirmative act terminates or interferes with such found rights, such action would constitute a de facto appropriation for which • any claimant hereafter might be entitled to compensation.”
It has previously been pointed out that the Clark case, along with two other cases, were “test” cases involving the same transmission line with which we are concerned in this case. *685 Accordingly, the court finds that the owners of the fee, their successors and assigns, of the land covered by the permanent easement in question have, in addition to their stated right to use the land within the easement, the irrevocable and absolute right to cross the lands covered by the easement for the purposes of ingress and egress and the right to build roads for those purposes and to have the perpetual right to use said roads.
The court further finds that the use to which the Authority intends to put the property subject to the easement is transmission line uses of the type to which it is presently being put and for not more than the construction of two 345-KV transmission lines with transmission towers on any single circuit a minimum of 500 feet apart and wires a minimum of 33 feet above the ground.
The court finds that the permanent easement in question does not constitute a severance of the lands covered by said easement nor does it materially interfere with access to said lands. The only physical interference with access is the ground space covered by the towers which are to be at least 500 feet apart.
If the Authority or the State by some affirmative act terminates or interferes with this claimant’s or any claimant’s found rights in regard to the lands covered by said easement, or puts said lands to a greater use than the use stated in its appropriation as clarified by its filed resolution and its resolution offered and received in evidence, that such actions shall constitute a de facto appropriation for which any claimant hereafter might be entitled to compensation. (Jafco Realty Corp. v. State of New York, 18 A D 2d 74, supra.)
Claimant’s experts claimed that the highest and best use of the property in question was that of potential residential subdivision. The court does not find such use substantiated by the proof presented during this trial. The claimant has used the premises as a dairy farm since its purchase in 1956 and is still using same for farm purposes. No subdivision map was prepared or filed. The nearest real estate subdivisions to the subject property are approximately one and one-half to two miles distant therefrom. The subject property is generally located in a rural area and the court noted in viewing the property and this general area that the development of the area has been some residential building in the strips of land adjacent to the highway, with the rear lands continuing to be used for agricultural purposes. The court notes that there are thousands of acres of rural land in the State of New York which, in the aspects of terrain and drainage, would be suitable *686 for residential subdivisions. It would appear, however, that much more is required to classify this land as potential residential subdivision land. Certainly, the court cannot rule that an area has a potential residential subdivision use because it might, in 5, 10 or more years, have such a purpose. “ Care must be taken * * * not to substitute for reality the mere hope of the owner that the property might be used for some specific purpose.” (Matter of City of Rochester [Smith St. Bridge], 234 App. Div. 583, 586 [4th Dept., 1932].) If the court had found a highest and best use of residential subdivision, it would not have found consequential damage to such subdivision by reason of this permanent easement. Claimant did not present substantial proof that the transmission line or lines would adversely affect such use; nor, that there was substantial or even material buyer resistance to the purchase of subdivision lots adjacent to such transmission lines. Conversely, the Authority produced substantial and cogent proof that such transmission lines adjacent to residential lots, subdivision or strip development, did not adversely affect their market value or their marketability. The court cites with approval statements contained in the case of New York State Elec. & Gas Corp. v. Albert Jantzi (Supreme Ct., Erie County, Condemnation Order March 25, 1960, decision Dec. 14, 1960). Many of the same questions were presented to the Commissioners as have been presented in this case. At pages 6 and 7 the Commissioners stated:
“ Much has been said during this hearing as to whether or not the Commission should allow consequential damages resulting from the presence of power lines.
“ The cold, hard facts of this issue were best presented, however, by the New York State Electric and Gas Corporation. They secured and presented a statistical survey of value of property adjacent to power lines in the Towns of Amherst, Cheektowaga, Hamburg, Elma and Marilla which showed that homes adjacent to power lines would not sell for less because of said lines. The Commissioners then personally visited and interviewed various owners of property contiguous to power lines.
“ The Commissioners believe that this survey indicates that the existence of power lines and towers is not detrimental to the marketability of the parcels of land adjacent thereto.
“ Furthermore, in this period of industrial development and with the march of progress, the public is accustomed to view power lines and towers and realize that the erection of such *687 is a necessity. Moreover, the Commissioners are well satisfied that there is no danger of risk involved for those who live adjacent to these power lines due to the effective safety devices that have been incorporated in said lines.
“ The Commissioners would award consequential damages if the facts were such that the marketability of land adjacent to power lines were affected or if there was a common fear among the public of danger from the operation of said lines. However, the Commissioners have exhaustively studied the testimony adduced at the hearing and having read numerous articles on the subject have decided that none of the factors which would require a recovery for consequential damages are present and, therefore, makes no allowance for consequential damages.5 5
In the Clark decison (20 A D 2d 182, supra) the Appellate Division considered, as previously stated, three ‘£ test ’ ’ cases involving the same permanent easement and power transmission line considered in the instant case. These £ 6 test ’ ’ cases contained to a great degree the same evidence which was presented to the court in the instant case by the Authority, with the addition that in this case the Authority clearly spelled out the limitations of the permanent easement. The Appellate Division, after considering the record in these three cases, made findings, which have also been made in this case, and stated: “ Upon these findings we conclude that none of the claimants has sustained any consequential damage. ’ ’ The court points out that the three ££ test ” cases, as well as the instant case, were well tried and that claimants’ attorneys made excellent presentations of their clients’ positions in said cases. How-eve i', in this court’s opinion, the weight and quality of the evidence was substantially in favor of the Authority’s position on consequential damages.
The court finds that the highest and best use of claimant’s property before the appropriation was strip development of the frontage along Judd Boad and agricultural of the area removed from Judd Boad and in rear of the strip development area.
The court finds that the highest and best use of claimant’s property outside the area of the 15.17 ± acres directly covered by the easement after the appropriation is strip development of the road frontage and agricultural of the area in rear of the strip development area. The court finds that the highest and best use of claimant’s property within the 15.17 ± acres covered by the easement after the appropriation was agricultural. The court does not find any consequential damage *688 to claimant’s property outside of the permanent easement area of 15.17 ± acres. The court particularly points to the fact that farmers across the State of New York are using lands, as can this claimant, under transmission lines for agricultural purposes, plowing, sowing, harvesting and grazing livestock. So long as there is no severance of the farm property by the transmission line, and the court has ruled there is none, the court cannot find any ground for consequential damage to the remainder of the claimant’s farm. The court has previously stated its opinion that there was no consequential damage to the remainder still suitable for strip development.
On the west side of Judd Road, the permanent easement covered 13.47 ± acres of claimant’s land, and on the east side of Judd Road, covered 1.7 ± acres of claimant’s land. The Authority contends that of this total of 15.17 ± acres 13.79 acres is pasture land and 1.38 acres, being a 300-feet by 200-feet strip on the west side of Judd Road, is strip development land. The Authority contends that the frontage on the east side of Judd Road is pasture land and not strip development land because it is three to four feet below road grade and has a small creek running through it to Oriskany Greek which is the easterly boundary of the subject property. The court, after viewing the property, has concluded that the 1.7 ± acres east of Judd Road, with frontage not only on the said road on its west boundary but also on Oriskany Creek on its east boundary is an excellent location for residential use and could be easily prepared for such use.
The court finds that the 1.7 ± acres east of Judd Road had a fair and reasonable market value before the appropriation of $3,000; that the 1.38 ± acres immediately west of Judd Road had a fair and reasonable value before the appropriation of $3,000; and that the 12.09 ± acres west of Judd Road and denominated pasture land had a fair and reasonable value before the appropriation of $604.50. The court accepts the position of the Authority’s experts that the 12.09 ± acres denominated pasture was damaged 90% and finds that its fair and reasonable market value after the taking was $60.45. As the 1.38 ± acres on the west side of Judd Road and the 1.7 ± acres on the east side of Judd Road may be used after the appropriation as pasture land the court finds that said 3.08 ± acres has a fair and reasonable market value after the appropriation of $15.40.
The court, therefore, finds that the fair and reasonable value of the 15.17 ± acres covered by the permanent easement before *689 the appropriation was $6,604.50; that the fair and reasonable value of said 15.17 ± acres after the appropriation was $75.85; and that the amount by which claimant has been damaged is $6,528.65, which represents direct damage.
Applying the above before and after values and direct damage to the whole of claimant’s property the court finds that the fair and reasonable market value of the subject property before the taking was $75,115; that the fair and reasonable market value of the subject property after the taking was $68,586.35; and that the amount by which claimant has been damaged is $6,528.65; of this amount $6,528.65 represents direct damage and there is no consequential damage.
The court has viewed the premises.
The claimant is entitled to judgment in the amount of $6,528.65, with interest thereon from the 10th day of August, 1960, to the 10th day of February, 1961, and from the 25th day of May, 1961, to the date of entry of judgment herein.
The award to claimant herein is exclusive of the claims, if any, of persons other than owners of the appropriated property, their tenants, mortgagees and lienors having any right or interest in any stream, lake, drainage and irrigation ditch or channel, street, road, highway, or public or private right of way or the bed thereof within the limits of the appropriated property or contiguous thereto; and is exclusive also of claims, if any, for the value of or damage to easements and appurtenant facilities for the construction, operation and maintenance of publicly owned or public service electric, telephone, telegraph, pipe, water, sewer and railroad lines.
The foregoing constitutes the decision of the court upon which judgment may be entered. The claimant and the State may file their proposed findings of fact and conclusions of law within 30 days from the date of this decision, and if same are not filed within that time they are deemed to have been waived, and if filed the court will mark the same in the usual manner.