40 N.Y.2d 1060 (1976)
Jessica Kravec et al., as Coexecutors and Cotrustees of Stephen Kravec, Deceased, Appellants,
v.
State of New York, Respondent. (Claim No. 53007.)
Court of Appeals of the State of New York.
Argued November 16, 1976.
Decided December 28, 1976.
Bernard Samuels and Eric M. Alderman for appellants.
Louis J. Lefkowitz, Attorney-General (Dennis Hurley and Ruth Kessler Toch of counsel), for respondent.
Chief Judge BREITEL and Judges GABRIELLI, JONES, WACHTLER and COOKE concur; Judge JASEN dissents and votes to affirm in a separate opinion in which Judge FUCHSBERG concurs.
*1061 MEMORANDUM.
The order of the Appellate Division should be reversed and the case remitted to the Court of Claims for the purpose of fixing damages in accordance with this memorandum.
The State of New York appropriated a permanent easement 21 feet wide over claimants' property "for the purpose of constructing, reconstructing and maintaining thereon a drainage ditch, drainage structures and appurtenances". The easement further reserved to the owners "the right of using the said property, providing the exercise of that right * * * does not interfere with or prevent the user and exercise of the easement rights". The easement separates 9.217 interior acres of claimants' property from Bridge Street and if the easement denies access to that inner portion, that property is landlocked and claimant is entitled to compensation accordingly.
The question is whether the reservation clause includes by implication an untrammeled right of access across the easement to the inner portion of the property. The easement is defined in exceedingly broad terms and the reservation clause in no way diminishes the sweep of those terms. The reservation clause does permit the claimants to use the property provided such use does not interfere with the "exercise of the easement rights." This condition of noninterference, however, gives the State a virtual veto power over any use the claimants may wish to make of their property because only the State knows or can predict what size structures or impairments it may erect under the easement, or how it will use the easement and whether an activity by the claimants will interfere or not. Furthermore, the limitation of the reservation clause necessarily leaves it to the State to say whether the use the owner wishes to make of the property interferes with the easement. Under these circumstances a clear right of access does not exist and the inner portion of the property is thus deemed landlocked (Wolfe v State of New York, 22 N.Y.2d 292; Wayside Nurseries v State of New York, 36 AD2d 212, affd 34 N.Y.2d 876).
The Appellate Division's reliance on Clark v State of New York (20 AD2d 182, affd 15 N.Y.2d 990) and Jafco Realty Corp. v State of New York (18 AD2d 74, affd 14 N.Y.2d 556) is inappropriate since both cases involved easements with an *1062 explicit reservation of access which is here absent, even by implication.
The amount of damages are fixed and measured at the time of the taking (Chester Litho v Palisades Interstate Park Comm., 27 N.Y.2d 323; Wolfe v State of New York, supra). Absent an express grant of access, any action by the claimants on the easement may be deemed by the State to interfere with its rights; and any claimed implied right of access under these circumstances is too tenuous to merit consideration. Here, the easement effectively landlocks the inner portion of claimants' property and the State should respond in damages, accordingly.
JASEN, J. (dissenting).
I believe that the courts below properly dismissed the claim. The reservation of rights necessarily carried with it the right to build a bridge over the State's drainage ditch. The majority's decision awards the claimant for a taking that did not occur, saddles the State and its taxpayers with a property for which there is no governmental use and will result in the waste of an increasingly scarce natural resource, land. Most certain, the court's decision is not compelled or sustained by Wolfe v State of New York (22 N.Y.2d 292).
On October 31, 1968, the State appropriated a permanent easement over lands held by the late Steven Kravec or one of his corporations in the Town of De Witt. The easement was 21 feet wide and about 537 feet long. The purpose of the taking was to permit the construction of a drainage ditch incidental to a State highway. The easement bisected the Kravec property and resulted in landlocking the remaining 9.217 acres of the property. At the time, the property consisted of unimproved and vacant acreage and was subject to an existing county sewer easement. According to claimants' appraiser, the highest and best use of the property is for commercial development and it is zoned accordingly. The easement specifically reserved to the owner of the property "the right of using the said property, providing the exercise of that right by such owner, his successors or assigns, does not interfere with or prevent the user [sic] and exercise of the easement rights as above described and defined." The use of the easement was restricted to the construction, reconstruction and maintenance of "a drainage ditch, drainage structures and appurtenances in and to all that piece or parcel of property".
Claimants, the coexecutors and cotrustees under the will of *1063 Kravec, filed a claim for damages allegedly caused by the taking in the amount of $330,000. The Court of Claims concluded that the "fee right of claimants to cross the permanent drainage easement was clearly and obviously not taken away by the language of the taking instrument." The court awarded the claimants $7,469 for direct damages resulting from the actual taking and $3,800 to cover the cost of building a bridge across the drainage ditch. The Appellate Division affirmed the resulting judgment. (51 AD2d 848.) I would affirm their order.
It appears to me that the claimants are attempting to obtain a substantial sum of money from the State for a piece of property that no one, especially not the claimants and the State, has any immediate use for. The theory which they assert is that the State, by taking land and constructing a drainage ditch, cut off the access to the interior portion of their property. This might well be true, except for the simple expedient of building a bridge. Recognizing that bridging the land is the obvious means to rectify the access problem claimants contend that the State had left them no right to build such a bridge. In my view, this argument is fallacious. The State expressly reserved to the property owner the right to use the appropriated land in a manner consistent with the public use  i.e., drainage. The only conceivable use that claimants could make of the appropriated land is to build a bridge over it. To hold, as the majority does, that the reservation does not authorize bridging is to read the reservation right out of existence. Moreover, the construction of a bridge per se would not be antithetical to the State's easement rights. Indeed, the State is willing to permit construction and the courts below have specifically ordered the State to pay the cost of constructing a bridge. Of course, the State, through the vehicle of passing upon work permits, has the right to ensure that the bridge to be constructed is a satisfactory one. But this does not mean that the State either had the authority or intends to withhold the necessary permits arbitrarily. In any event, after the bridge construction is authorized and completed, the claimants will have an untrammeled right of access across the easement to the inner portion of the property.
Wolfe v State of New York (22 N.Y.2d 292, supra) is quite a different case. In that case, the Appellate Division found that the taking destroyed the sole means of access "at the outset", but nevertheless reversed an award so that the State might *1064 stipulate to the construction of a bridge. Upon retrial, the State did enter into a stipulation that a bridge would be authorized and approved. Our holding was simply that once it was found that the original taking precluded access, the State could not attempt "to reduce its damages by a subsequent limitation on its original appropriation." (22 NY2d, at p 297.) We stated that "[t]he simple fact is that the State had taken more than it actually needed for its purposes and, when it became apparent years later that it would have to pay for the rights which it had unnecessarily acquired, it was willing to return them to the owner by means of a stipulation and a quitclaim deed. As is manifest, the State sought, and the Appellate Division granted, not a clarification of an ambiguity but a modification of the original appropriation." (22 NY2d, at p 296.) Of course, if the easement taken by the State reserved access to the property owner, the remainder of the property had not been taken. (22 NY2d, at pp 296-297; citing Jafco Realty Corp. v State of New York, 18 AD2d 74, affd 14 N.Y.2d 556; Clark v State of New York, 20 AD2d 182, affd 15 N.Y.2d 990.)
The language of reservation employed in this case should be viewed in the light of its appparent object and the extent of the limitation imposed on the use of the reservation is to be "determined by the language used and upon consideration of the necessity to be supplied and no greater limitation will be placed upon what claimant may do in the exercise of its easement than the public use requires." (Jafco Realty Corp. v State of New York, 18 AD2d, at pp 75-76, supra.) The reservation permits all uses, including bridging, consistent with the public interest, as that interest is measured by an objective standard. Unlike Wolfe (supra), the determination of the public interest is not left to the unbridled discretion of some identified State officer.
The record clearly establishes the willingness of the State to permit and pay for the construction of the bridge and the award made specifically provides for the payment of the cost of the bridge. The contention that the State might someday decide that the bridge must come down is mere guesswork. Moreover, should that eventuality come to pass, the damage to the remainder of the parcel would be inflicted at the time of the destruction of the bridge by the State and any such action would constitute a de facto appropriation for which the claimants would be entitled to compensation. (Clark v State of New York, 20 AD2d, at p 190, supra.)
*1065 Since there is no dispute that the land involved in this appeal could be used in a commercial development by the simple construction of a short bridge over the drainage ditch, no allowance should be made for property not taken for public use. The result of the court's decision is to permit the property owners to obtain a large payment from the State for alleged damage that is rectifiable at approximately one hundredth of the cost of the payment to claimants. The State will unnecessarily pay a large sum to claimants, the taxpayers will inherit idle land, and this potentially productive land will sit idle and vacant. I cannot agree with such a determination, and therefore dissent.
Order reversed, with costs, and the case remitted to the Court of Claims for further proceedings in accordance with the memorandum herein.