Milton Albert, J.
This is a claim for the appropriation, of claimants’ land pursuant to section 30 of the Highway Law, as made applicable by title 1 of article 5 of the Public Authorities Law, which proceeding is described as Power Authority of the State of New York, Gilboa-New Scotland Transmission Line, Albany County, Map No. ANS-227, Parcels Nos. 234(1) and 234(2).
The aforesaid map and description were filed in the office of the County Clerk of Albany County on July 20, 1970.
The claim was filed with the Clerk of the Court of Claims and the Attorney-General on June 18, 1971, and has not been assigned or submitted to any other court or tribunal for audit or determination.
The court adopts the description of the appropriated property as shown on the map and description filed in the Albany County Clerk’s office, a copy of which is attached to the claim and same is incorporated herein by reference.
Claimants were the owners of the property by reason of a deed dated July 2, 1965 from George A. Teeling, grantor, to Bichard H. Gustafson and Patricia S. Gustafson, his wife, grantees, recorded in the Albany County Clerk’s office on July 2,1965 in Liber 1835 of Deeds, at pag’e 460.
Prior to the appropriation, claimants owned an irregularly-shaped parcel of land containing 96± acres of land located in the hamlet of Clarksville in the Town of New Scotland in Albany County. The parcel, which may best be visualized on State’s exhibit B in evidence, claimants’ exhibit 5 in evidence, and the sketch on page 23 of the State’s appraisal, essentially bordered on the east side of North Boad and a corridor-like parcel extended southward to New York State Boute No. 43 (Delaware Turnpike). Access to the principal bulk of the parcel was also available on the south over Graceland Avenue and Olive Street, which streets extended north and south from Boute No. 43 to claimants’ lands. Topographically, the latter accesses were better than from North Boad, from which the land sloped up rather sharply.
The parcel was essentially vacant land and wooded, with the exception of the corridor-like portion, which had the Boute No. 43 frontage and on which were located a frame residence, a barn, a garage and other small structures.
For powerline transmission purposes, the Power Authority of the State of New York appropriated a 400-foot wide permanent easement, extending 2,810± feet in an east-west direction across the center of the bulk of the parcel. The easement, taken *262 by two parcels, contained 26.16± acres. None of the improvements was located in the takings.
Having the basic view that the corridor-like portion and an area to the east of G-raceland Avenue were separable and not involved in the northern bulk of the claimants’ property through which the easement was taken, the claimants’ appraiser valued only 77± acres to the north at $450 an acre or $34,650 and added $38,000 for the two parcels to the south for a total value before the takings of $72,650. After the takings, he valued the two southerly parcels at the same $38,000 as before, valued 20.84± acres to the north of the takings at $450 an acre as in the before situation or $9,378 and 30± acres to the south of the takings at $270 an acre or $8,100. His total after value was $55,500 rounded. His damages, therefore, were $17,150 — direct damages he computed to be $11,772 and indirect damages $5,378.
The State’s appraiser valued the 96± acres at $314 an acre or $30,200. To this he added $1,500 for the ground improvements and $18,300 for the buildings to arrive at a total before value of $50,000. After the takings, he valued the buildings and the improvements at the same $19,800. He valued the remaining 69.84± acres not encumbered by the easement at the same $314 an acre or $21,929; the 26.16± acres encumbered by the easement he valued at $30 an acre or $785 to arrive at a total after value of $42,500, rounded. His damages were $7,500, rounded, all of which were direct.
The -court viewed the property after the transmission towers and lines were constructed and installed.
After careful consideration of the testimony at the trial, the appraisals and exhibits in evidence, the demeanor of the witnesses, and the court’s view of the subject property, the court finds as follows: 1. The highest and best use of claimants’ property before the takings was residential and recreational. After the State’s takings, the highest and best use of claimants’ remaining property not subject to the permanent easement, was the same. 2. The appraisers had the same basic view that the buildings and improvements were not adversely affected by the State’s takings. With this the court agrees. However, for purposes of completeness, the court adopts the State’s appraiser’s before and after total values of $19,800 for such buildings and improvements. 3. The principal issues in this claim relate to land values before and after the State’s takings. The -claimants’ appraiser valued the northern bulk of 77± acres at $450 per acre in the before situation whereas the State’s appraiser’s valuation was $314 per acre for the entire 96± acres.
*263 After carefully reviewing the three land sales advanced by claimants’ appraiser and the four land sales advanced by the State’s appraiser and the testimony and evidence relating thereto, the court finds that claimants’ appraiser’s sale 1 and State’s appraiser’s sales 2 and 4 should be relied upon here for the finding of the before fair market value of the land.
With respect to claimants’ appraiser’s sale 1, the court finds such sale requires further minus adjustments for size (because of comparison with 96 acres instead of 77) and for location, which the court totals at minus $75 per acre. This produces an indicated value for the subject land of $376 per acre.
As to State’s appraiser’s sale 2, the time adjustment should be reduced to minus $70 instead of minus $100 and the adjustment for type should be minus $45 instead of minus $75. This produces an indicated value for the subject land of $372 per acre.
Finally, as to State’s appraiser’s sale 4, the time adjustment should be minus $50 per acre instead of minus $65 per acre and there should be a plus adjustment of $10 per acre for size. This produces an indicated value for the subject land of $339 per acre.
Adopting the State’s appraiser’s approach of basically taking the highest indicated value for the subject land, the court finds that the before fair market value of claimants’ land was $375 per acre. For 96± acres this computes out to a before fair market value of $36,000.
With respect to after fair market values, the court notes the following: a. Claimants’ appraiser gave no value to the 26.16± acres subject to the permanent easement (direct damage $11,772), whereas the State’s appraiser gave a $30 per acre after value to such land. b. With respect to the remaining 20 ± acres north of the permanent easement area, each appraiser found the same after value per acre as he found for the before value. Accordingly, neither found a consequential damage for such area. c. The same type of comment may be made with respect to the corridor-like strip. Neither appraiser found a consequential damage to the land here. d. With respect to the bulk area south of the permanent easement area, claimants’ appraiser found a 40% consequential damage, whereas the State’s appraiser found the same after value per acre for land in this area as he found in the before situation. While claimants ’ appraiser, in justification for his consequential damage finding, relied basically on a claimed lack of available legal access from North Road, he also noted the division of the remaining northern bulk into two parts and a developer’s need to “ anticipate the residential buyer’s opposition to high voltage transmission lines *264 crossing lands abutting residential lots.” At the trial, basic reliance was placed on the claimed lack of available legal access from North Road. As noted in (b) above, no claim was made for consequential damage to the area north of the State’s takings. Thus, the adverse effects of the division were claimed to be on the southerly bulk area. Buyer ‘ ‘ opposition to high voltage transmission lines crossing lands abutting residential lots ” was not relied upon at the trial. However, since claimants’ appraiser did consider this aspect in his appraisal, the court believes it should be dealt with here.
The court has reviewed the following pertinent decisions which have dealt with valuation questions relating to the taking of power transmission line easements by the Power Authority of the State of New York: Clark v. State of New York (20 A D 2d 182, affd. with mem. 15 N Y 2d 990); Olin v. State of New York (41 Misc 2d 678); Joyce Constr. Co. v. State of New York (Claims Nos. 37889 and 37890, opn. by Lengyel, J., filed Nov. 19, 1964, affd. 28 A D 2d 1207); Smith v. State of New York (49 Misc 2d 985, affd. 29 A D 2d 1050); Ardizzone v. State of New York (opn. by Lengyel, J., filed Nov. 13, 1972).
The pertinent language of the power transmission line easement on the instant taking map reads as follows:
" PERMANENT EASEMENT EOR POWER TRANSMISSION LINE
“ A permanent easement to be exercised in, on, over, under, thru and across the hereinafter described property for the purpose of constructing, erecting, reconstructing, replacing, relocating, operating, maintaining, repairing and removing line or lines for transmission of electricity and messages by means of electricity, including, but not limited to poles, towers, cross arms, wires, cables, underground conduits, counterpoise, guys, stubs, anchors, brace poles, lightning arrestors and other appurtenant or supporting apparatus or structures and, in connection therewith, for the purpose of preserving or enhancing the environment by planting trees and shrubs and other vegetation; together with the right at all times to enter upon the premises to cut, trim, move, demolish and remove any and all brush, trees, buildings or structures, or other obstructions on said property; also the right of ingress, egress and regress at all times over, upon and across said property; and every right, privilege and authority which now or hereafter may be deemed necessary by Power Authority of the State of New York, its successors or assigns for the complete enjoyment of the aforementioned easement.
*265 “ Such permanent easement shall not limit, restrict or interfere with any existing railroad system or public utility corporation facilities and shall not limit or restrict the jurisdiction of any municipality to maintain, repair or reconstruct any existing street, road or highway within the limits of the above described property, provided no change of grade or alignment of such railroad system, public utility facilities, street, road or highway shall be made or constructed which will interfere with or prevent the use and exercise by Power Authority of the State of New York, its successors or assigns of the rights hereinabove provided, and shall not limit or restrict the right and privilege of the owner of the above described property, his successors or assigns, of using such property including the right and privilege of ingress, egress and regress on, over and across such property by foot or by vehicles together with the right and privilege to construct and maintain on such property, road or roads for that purpose and the right and privilege to install and maintain electric, telephone, water, gas, sewer lines and other customary wires and conduits or other usual utility facilities above or below the surface of the ground at suitable locations in conjunction therewith provided the exercise of such rights and privileges does not in the judgment of Power Authority of the State of New York interfere with 'or prevent the use and exercise of the permanent easement and rights hereinabove described. No road or facility shall be constructed, maintained or suffered upon the property described above without the written consent of Power Authority of the State of New York, its successors or assigns which consent will not be unreasonably withheld. Written approval will be granted for the construction of at least one road across the property described above. In addition written approval will be given for at least one set of electric, telephone, water, gas, sewer lines and other customary wires and conduits or other usual utility facilities above or below the surface of the ground. Notwithstanding the foregoing, no building or other structures shall be erected, maintained or suffered upon the land hereinabove described without the written consent of Power Authority of the State of New York which consent shall not be unreasonably withheld.”
On the basis of such language in the instant taking map concerning claimants’ rights of passage in and use and enjoyment of the easement area and the consideration in the above decisions (a) relating to the extent of damage sustained by land subjected to a power transmission line easement (generally 90%) and (b) relating to whether lands immediately adjacent to the permanent *266 easement area were consequentially damaged (with studies offered by the Authority and accepted by the courts "which indicated that such damage was not sustained), the court now proceeds to the finding of the after fair market value of claimants’ land.
Based on the available uses and purposes which claimants may make of the land subjected to the power transmission line easement, including ingress and egress, such as agriculture, recreation, hunting, backyard purposes, the court, based on the record before it adopts the State’s appraiser’s 90% viewpoint. Claimants’ appraiser’s 100% damage is not acceptable because there are a number of uses available to claimants as a reading of the permanent easement language clearly shows. Ninety per cent damage findings were adopted and sustained in decisions above cited and with respect to language and judicial construction that were not more liberal than that here involved.
Since claimants’ appraiser did in his appraisal refer to possible residential buyer opposition to high voltage transmission lines crossing lands abutting residential lots, the court’s response is based in part on the conclusions reached in the following two studies introduced by the defendant as Exhibits J and K in evidence:
ECONOMIC IMPACT OF TRANSMISSION TOWER LINES & RIGHTS-OF-WAY UPON RESIDENTIAL DEVELOPMENT IN THE VICINITY OF THE CITY OF ROCHESTER, STATE OF NEW YORK.
EFFECTS OF TRANSMISSION LINE RIGHTS-OF-WAY UPON RESIDENTIAL PROPERTY VALUES IN THE VICINITY OF THE CITY OF UTICA, COUNTY OF ONEIDA, STATE OF NEW YORK.
The conclusions were to the effect that the existence of transmission lines or the rights of way thereof did not have an adverse effect on land values. On such basis and the record before it, the court finds that the presence of the power transmission line easement did not have an adverse effect on the value of claimants’ land adjacent thereto.
Claimants’ appraiser’s principal thrust was that possible access from North Road to the southern bulk area was made questionable because of the necessity for written consent from the Power Authority and that access from the south — via Gfraceland Avenue or Olive Street — would not be as attractive. The court rejects both legs of this negative viewpoint because it finds (a) that adequate physical legal access from North Road over the power transmission line easement area may readily be attained under the second paragraph of the permanent easement *267 language and (b) that, because of the substantial grade for access from North Road, and the much more attractive topographical grade conditions for access from Grraceland Avenue or Olive Street, any probable access into the southern bulk area would have been and will be via such avenue and street. The court does not regard access via North Road per se as having a higher residential quality or flavor than access via G-raceland Avenue or Olive Street. In any event, access that was available from North Road in the before situation can readily be obtained and be available in the after situation over the easement area. Accordingly, the court must reject claimants’ appraiser’s 40% consequential damage to the southern bulk area.
The court, therefore, is left with a basic before fair market value for land, which value will be the same for after fair market value for the remaining land not subject to the power transmission line easement. Then, with respect to land subject to such easement, there will be a finding of .10% as its after fair market value. In effect, the remaining 90% will be direct damage. The takings totaled 26.16± acres. Accordingly, there remained 69.84± acres having an after fair market value of $375 per acre. This computes out to $26,190. To this must be added 26.16± acres having an after fair market value of $37.50 per acre — for a total of $980 rounded. Adding these two after values together, the court finds an after fair market value of $27,170. Subtracting from a before fair market value of $36,000, the court finds a direct damage of $8,830, to which claimants are entitled together with appropriate interest.
At the trial several motions were made upon which decision was then reserved. The court’s decisions with respect to some of these motions are indicated in the court’s substantive decision above. Those not so disposed of are now denied.
Claimants are awarded the sum of $8,830 for damages, all of which are direct, with interest thereon from July 20, 1970 to January 20, 1971 and from June 18, 1971 to the date of entry of judgment herein.