Milton Alpert, J.
This is a claim for the appropriation of claimants’ land pursuant to section 30 of the Highway Law, which -proceeding is described as Rhinebeclc-Hudson, Part 4,-S. H. No. '8359, Columbia County, Map No. 54, Parcel No. 70.
*805 • The aforesaid map and description were filed in the office of the County Clerk of Columbia County on June 2,1970.
The claim was filed with the Clerk of the Court of Claims and the Attorney-General on May 2,1972, and has not been assigned or submitted to any other court or tribunal for audit or determination.
The court adopts the description of the appropriated property as shown on the map and description filed in the Columbia County Clerk’s office, a copy of which is attached to the claim and same is incorporated herein by reference.
Claimants were the owners of the property by reason of a deed dated September 8, 1967 from John Fisher and Janet Fisher, his wife, grantors, to Andrew Nyczepir and Lillian Nyczepir, his wife, grantees, recorded in the Columbia County Clerk’s office on September 8, 1967, in Liber 437 of Deeds, at page 262.
Claimants were the owners of an irregularly shaped parcel of land located on the westerly side of State Highway Route 9G in the Town of Germantown in Columbia County. The parcel was divided into two sections by Sharps Landing Road which intersected with Route 9G (see sketch on page 7 of the claimants’ appraisal). The entire parcel contained 24.3± acres of land.
To the north of the intersection were located a two-story frame residence, garage, and other buildings set back quite a distance from Route 9G. Again, the sketch on page 7 of claimants’ appraisal is helpful to show such location.
For the purpose of restoring, preserving and enhancing natural or scenic beauty ’ ’, the State appropriated a permanent easement generally rectangular in shape, containing 2.384± acres. The taking was in the form of a frontage strip averaging 150± feet in depth, and extending northward from the Sharps Landing Road intersection for a distance of 716.97± feet along Route 9G. Its location with reference to the residence and the driveway leading to the residential area is shown on the sketch on page 7 of claimants’ appraisal.
The easement reserved to the owners of the land, their successors or assigns the right to post ‘ ‘ no trespassing ’ ’ signs and an advertising sign in the easement area and to occupy the land for general crops and livestock farming, including orchards.
Claimants’ appraiser valued the 24.3± acres at $900 an acre or $22,000 rounded. To this he added $15,000 for land improvements including the enhancement of 1,000 fruit trees, and $28,500 as the value of the residence and other buildings to arrive at *806 a total ¡before value of $65,500. After the taking, he found an after value of $58,500, and thus found damages for the 2.384± acres taken to be $7,000 rounded.
The State’s appraiser valued the land at $1,000 per acre for a total of $23,000. His total area was 23± acres. He found the value for the land improvements to be $2,000 and valued the buildings at $21,000 to arrive at a total before value of $46,000. After the taking, he valued 20.61 acres of the land remaining at $1,000 per acre for $20,616 and the area subject to the easement at $240 per acre or $572 for the area taken; his total after land value was $21,200. He found the same values as in the before situation for the land improvements and the buildings — a total of $23,000. Thus his after value was found to be $44,200 and his damages for the land appropriated were $1,800.
After careful consideration of the testimony at the trial, the appraisals and exhibits in evidence, and the demeanor of the witnesses, the court finds as follows :
1. The highest and best use of claimants’ property before the State’s taking was residential and agricultural, including fruit brchard. The highest and best use after the taking was the same.
2. Claimants’ appraiser advanced the view that claimants’ land was possibly an area for residential development — with possible construction of two split-level homes in the permanent easement area. Claimants did not bear their burden of proof to show demand and that this was an area for potential residential development. Furthermore, viewing the sketch on page 7 of claimants’ appraisal, frontages not subjected to the permanent easement taking are still available for such possible development. Also, the area of the permanent easement taking is generally in front of claimants’ residence and the construction of the above-described two split-level homes would clearly impair the scenic view which now exists from such residence. Such being the case, the court doubts that homes would be so built that would produce such an adverse effect on claimants’ residence. The court accordingly, rejects claimants’ appraiser’s view >
3. With respect to the before and after values of the buildings and improvements, claimants’ appraiser’s valuations were founded on a depreciated cost basis. Such basis for valuation may not be .accepted here by the court. The State’s appraiser utilized a whole-to-whole comparative sales approach for his before and after values — which basis may be relied upon by the court. Accordingly, the court finds the before fair market *807 value of the buildings and improvements to have been $23,000 and the after fair market value therefor to have been the same.
4. The court thus comes to land valuation. The court adopts the State’s appraiser’s before valuation of $1,000 per acre as the before fair market value of claimants’ land. For 24.3± acres this totals $24,300. In so doing, the court in effect rejects claimants’ appraiser’s $900 per acre before valuation.
The principal problem, however, relates to after value. Although claimants ’ appraiser found only a $900 per acre before value, he nevertheless found an after land value of $9.94 per front foot for the permanent easement area and a land damage of $7,000 rounded. The court is unable to award damages on such basis because the court cannot understand how 2.384± acres which this appraiser said were worth $900 per acre before the scenic permanent easement was imposed, can be damaged to the extent of $7,000. If the land were totally damaged and made useless ■ — which is not the case — the damage would be $2,150, rounded, based on his $900 per acre.
The court now considers the ¡State’s appraisal and its approach to after value. The State’s appraiser found that in the after situation the area subjected to the permanent easement had “ minimal utility ” and would serve “as a buffer zone ”. By use of a comparative sales approach, and relying on his subjective adjustments, the State appraiser arrived at an after value of $240 per acre for the permanent easement area and the same $1,000 per acre for the land not subjected to such easement.
The court analyzes the State’s appraiser’s approach to the after value of the ñ.384± acre area subjected to the scenic permanent easement as valuing such area at 24% of its before value — thus finding a 76% damage. He arrived at such 24% after value by adjusting two sales. Very recently, this court had occasion to consider and find the after fair market value of land subjected to a power transmission line easement (Gustafson v. State of New York, 76 Misc 2d 260). The limitations and restrictions there on use of the permanent easement area are quite similar to those involved in the instant claim. In the court’s view the former limitations and restrictions are not more liberal than those here involved. Yet, with respect to such former limitations and restrictions, a body of law has developed where only a 10% after value has been found to be appropriate — thus meaning a 90% damage (Clark v. State of New York, 20 A D 2d 182, affd. with mem. 15 N Y 2d 990; Olin v. State of New York, 41 Misc 2d 678; Joyce Constr. Co. v. State of New York, Claim Nos. 37889 and 37890, Lexgyel, J., filed Nov. 19, 1964, *808 affd. 28 A D 2d 1207; Smith v. State of New York, 49 Misc 2d 985, affd. 29 A D 2d 1050; Ardizzone v. State of New York, Claim No. 39273, Lengyel, J., filed Nov. 13, 1972).
In the instant claim and, as against the State’s appraiser’s subjective adjustment to a 24% after value, the court believes the 10% after value found in the above-cited decisions to be more cogent. Accordingly, the court finds, in the instant claim, that a 10% after value has resulted.
For 2.384± acres, this means an after value of $238 rounded. The total after value of the land is $21,916 for 21.916± acres not subjected to the scenic permanent easement plus $238 for the area so subjected — or a total of $22,150 rounded.
The court summarizes its decision as follows:
Before value
Buildings and improvements............. $23,000
Land .................................. 24,300
Total before fair market value............. $47,300
After value
Buildings and improvements............. $23,000
Land:
21.916 acres not subject to permanent
easement........................... 21,916
2.384 acres subject to permanent easement 238
Total after fair market value............... $45,154
Rounded... $45,150
Direct damage............................ $ 2,150
At the trial motions were made upon which decision was then reserved. The court’s disposition thereof is indicated in the above decision. Where not so indicated, the motion is denied.
The claimants are awarded the sum of $2,150 for all direct damages, with interest thereon from June 2,1970 to December 2, 1970 and from May 2, 1972 to the date of entry of judgment herein. _