TEOBALDS NOVICKIS et al., Appellants, *v.* STATE OF NEW YORK, Respondent. (Claim No. 51311.)

Fourth Department, May 23, 1974.

Hancock, Estabrook, Ryan, Shove & Hust (William L. Allen, Jr., of counsel), for appellants.

Louis J. Lefkowitz, Attorney-General (Dennis Hurley and Ruth Kessler Toch of counsel), for respondent.

GOLDMAN, J. Claimants appeal from a judgment of the Court of Claims in the amount of $40,896.40 for damages for the appropriation of 12.323 acres of their parcel of 69.807 acres situated on the north side of Route 31 in the Town of Clay. A new trial is sought by claimants on the ground that prejudicial error was committed by the court by receipt in evidence of a map, designated Exhibit " C ", which depicted the zoning status of the town as of March 8, 1971 when the date of the taking was January 15, 1969. Although claimants objected to receipt of the exhibit on various grounds, it was not until after the entry of the judgment that they ascertained that the map gave a distorted picture of zoning as of the date of taking because it showed the zoning condition as it existed more than two years thereafter. It is clear from the court's decision that it shared claimants' belief that the map was limited to the existing conditions as of the taking date.

As an additional reason for reversal claimants urge that receipt of the map and testimony about its data was a violation of rule 25a of the Rules of the Court of Claims (22 NYCRR 1200.27). They assert that use of the exhibit prevented adequate preparation to cross-examine the State's witness about the relation of its dates and data to the crucial question of the probability of rezoning.

The court found that the "Claimants failed to sustain the burden of proof on the reasonable probability of a rezoning of the southerly portion of the subject property to a commercial use" and further denied consequential damages by reason of limitation of access to the remaining 57.105 acres. With the latter finding claimants raise no issue on this appeal.

There can be no doubt that the map should not have been offered without informing the court of its updating. It would be a simple and easy disposition of this appeal to direct a new trial by reason of this error. We are greatly concerned by the delays in the prosecution of this case, which reached us more than two years and seven months after the trial court's decision and five years and three months after the date of taking. We have searched this record to determine whether we can affirm this judgment notwithstanding the irregularities in the record. By disregarding the defective map and from the properly received proof, we find that the award made by the court fairly and justly compensates claimants for their damages by reason of the taking.

The entire parcel was purchased by the claimants on November 4, 1954. From the revenue stamps affixed to the deed exhibit the purchase price was $10,000. While there were some old improvements on the property, both parties agree that they had no value. For the 15 years of claimants' ownership the property remained raw acreage with no residence built upon or near it. Prior to the taking claimants had encumbered the rear land area of the subject property by a grant to the New York Power Authority of a 300-foot wide easement of 10.92 acres which extended across the entire parcel in an east-west direction. A second right of way taken by the County of Onondaga for a water line consisted of 4.63 acres running in a northwesterly-southeasterly direction. The record does not indicate the considerations received by claimants for these easements. There is no existing sewer or planned sewer and no retail trade area in the vicinity, the only business place being a gasoline station to service travelers upon Route 31. The subject property is presently zoned A-1, agricultural district.

To buttress its finding that there was no reasonable probability of rezoning to a commercial use the court, relying upon the data on Exhibit "C", found that "there were 129 acres (16%) of the total commercially zoned acreage being used in the Town of Clay as against 676.5 acres (84%) of unused commercial zoned acreage". Readjusting the computation to ascertain the zoning condition as it existed on January 15, 1969,

we find that 234 acres (35%) zoned commercial were being used (110 acres of which were developed as a golf course) and 442.5 acres (65%) were unused and still await commercial development. Although the court erred in making its computation from the data reflecting the situation as of March 8, 1971, we nevertheless concur in its finding that the claimants did not sustain their burden of showing that there was a reasonable probability of rezoning.

Turning now to the award of the court, we agree that the only comparables which were competent proof of value were the sales designated numbers five and six, which were offered by the claimants. These showed an adjusted per acre price of $3,243 and $3,090 respectively. The court computed claimants' direct damages for the taking of the 12.702 acres at a value of $3,200 per acre. The record amply supports this determination. As stated above, claimants do not question the finding that the 114 feet of frontage remaining after the taking provided suitable access to the after taking acreage and, therefore, we concur in the court's refusal to award consequential damages.

The claimants' contention that the introduction of Exhibit "C" violated the intent of rule 25a presents a more difficult question. A strict construction of the rule probably supports the State's position that while it could not supplement the filed appraisal, it could add to the testimony of its appraiser by use of the map. The rule requires the filing of an appraisal and in the appendix supplies a form containing the minimal requirements. The State's appraiser prepared an appraisal consistent with the rule and, having placed this skeletal outline in the record, the State claims it was justified in using the map and several experts on the issue of probability of rezoning. In situations where the parties have sought to supplement their appraisals after the six-month limit the courts "impose rigid standards for the filing of appraisals after that period and the exchange of appraisals between the parties (*Leider* v. *State of New York*, 36 A D 2d 788; *Finger* v. *State of New York*, 36 A D 2d 655;" (*Laken Realty Corp.* v. *State of New York*, 37 A D 2d 885, 886). We have held that rule 25a must be read with section 16 of the Court of Claims Act and we have allowed evidence of sales to support the original appraisal, even though not included therein (*Mara* v. *State of New York*, 38 A D 2d 789). That determination, however, was made to cover the particular fact situation in that case. It should not be considered as a weakening of the rule, the purpose of which " is to enable the parties to prepare for trial with knowledge of each

other's valuations and the foundations and justifications thereof '' (*Parisi* v. *State of New York,* 62 Misc 2d 378, 382). Simply expressed, the rule attempts to require full disclosure, to take the game aspect out of the case, to prevent surprises, to permit the court to determine just compensation based solely upon the facts unhindered by gamesmanship. In the instant case the map was introduced during the testimony of an expert who stated that he had been retained only two days before he took the witness stand and, therefore, there was insufficient time to give claimants a copy of the map. While this is an explanation, it is not unreasonable to require the parties to prepare their proof sufficiently in advance of trial so that exchanges may be made or else suffer the consequence of refusal to permit the use of the document.

We cannot avoid a brief comment about the claimants' appraisal in this case. The original notice of claim demanded $95,000. It was thereafter amended by increasing the amount of the claim to $120,050. Claimants' appraiser testified that he found the before valuation to be $328,900 and that after the taking of 12.323 acres the value of the remaining 57.105 acres was $67,000, which gave a value of the appropriated property of $261,900. This was more than 100% larger than the amount demanded in the amended claim. Merely reciting the figures emphasizes the lack of realism in such an appraisal. Regrettably, we have found in too many appropriation cases appraisals on both sides which are so clearly exaggerated or undervalued as to make them worthless to the court. We would suggest that this practice should be abandoned and replaced by serious efforts to assist, rather than distract or confuse, the court in arriving at fair compensation in appropriation cases.

The judgment should be affirmed.

WITMER, J. P., MOULE, CARDAMONE and MAHONEY, JJ., concur.

Judgment unanimously affirmed without costs.