OPINION OF THE COURT
James C. O’Shea, J.
This is an unassigned, timely filed claim, concerning a partial appropriation by the Power Authority of the State of New York of a permanent easement across claimants’ property. The proceeding, entitled “Massena-Moses Transmission Line,.Massena-Quebec Transmission Line, County of St. Lawrence, Town of Massena, Map No. SMA 524, Parcel No. 524”, facilitated the construction of the referenced high voltage power transmission lines.
The subject property, stipulated as containing 356.75 acres, was located in the County of St. Lawrence, State of *445 New York, largely in the Town of Massena with some portion being in the Town of Brasher.
The permanent easement appropriated by the Power Authority embraces 30.93 acres and basically runs east to west. It is 366.57 feet wide on the easterly boundary and 489.39 feet wide on the west. The easement covers a distance of approximately 3,400 ± feet across the subject property. Constructed on the easement were two power lines, one a 765,000 kilovolt (765 kV) line and, located 175 feet to the north, a 230,000 kilovolt (230 kV) line.
Chronologically, these lines were formally proposed in 1973, at which time property owners who might potentially be affected were advised. Easements were appropriated in 1976, the lines were constructed from 1977 through 1978 and were energized in 1978.
Each “line” in reality contains 12 wires, the 230 kV line having 6 sets of wires in pairs of 2, while the 765 kV line contains 3 sets having 4 wires each. The lines proceed across the subject property supported by three towers each, the towers being about 1,000 feet apart. As to the 765 kV line, the so-called sag height (the point where a given line is closest to ground level) is 48 feet. Where the line crosses Route 81 the sag height is 70 feet.
Besides the permanent easement as described above, the Power Authority also appropriated the right to cut, trim and remove brush, trees and other obstructions within 50 feet of either side of the transmission line easement, thereby encumbering an additional 7.701 acres.[1]
USE TO WHICH THE EASEMENT WAS DEVOTED:
765 KILOVOLT TRANSMISSION LINE
An issue which received considerable attention in the trial of this claim was the nature of the use to which the appropriated parcel was put, i.e., as noted above, it became part of the corridor for a 765 kV power line, the first of its kind in this State. Moreover, due to a claim of potential
*446 health hazards through the operation of the line, there was a fair measure of opposition to the building of said extra high voltage lines. The Public Service Commission (PSC), whose duty it was to certify the line, conducted substantial hearings on the issue. • They spent several years in the process, heard in excess of 31 expert witnesses and took some 14,000 pages of testimony concerning the potential effects of the line. (See claimants’ Exhibit No. 27, PSC Opn No. 78-13, 18 PSC 665, 671.)[2] These hearings constituted a far-reaching investigation into the health and safety aspects of extra high voltage overhead transmission facilities. (See PSC Opn No. 78-12,18 PSC 600, 612,18 PSC 665, 674-675.)
In their filed appraisal, and through their appraiser’s testimony at trial, claimants asserted that adverse publicity generated by the hearings and the questions raised therein had a negative impact on the lands ultimately encumbered by the 765 kV line. Specifically, they argued that the unfavorable statements and reports concerning health hazards had the effect of decreasing the market value of claimants’ land, located as it was adjacent to the allegedly offending power line. Hence, claimants demanded consequential damage for this alleged diminution in value.
The Power Authority of the State of New York (PASNY), on the other hand, maintained that claimants were not' entitled to consequential damages. Not only did they feel that no damage had occurred, but they posited that consequential damages caused by public fear would only be compensable where the underlying apprehension was based upon reason or experience (citing Heddin v Delhi Gas Pipeline Co., 552 SW2d 886 [Tex]). PASNY further contended that there existed no reasonable basis for any fear on the part of any prospective purchasers, and presented numerous experts to support this argument.
We would at this point express our opinion that some vague and unfounded fear cannot form a basis for the recovery of consequential damage, as any such damage *447 would be speculative and capricious in nature. Only a reluctance to purchase predicated on the reasonable apprehension of a potential purchaser should be considered for, after all, fair market value is defined as: “the amount of money which a purchaser willing but not obliged to buy the property would pay to an owner willing, but not obliged to sell it”, (Nichols on Eminent Domain, vol 4, p 12-71), “* * * both parties being aware and fully informed of all the uses to which the property is adapted and capable of being used.” (Claimants’ appraisal, Exhibit No. 23, introductory page; emphasis added.)
Claimants, in an attempt to show the source of purchaser apprehension, repeatedly offered the testimony of one Dr. Andrew Marino, given at the PSC hearings. The court continually rejected the offer. Claimants asserted that inasmuch as the statements were not offered for the truth or falsity of the same, but merely to prove that they were made, the hearsay rule had no application.
However, if claimants were attempting to show that prospective purchasers were affected by the mere fact that these statements were made, said statements would only be relevant if it was first shown that purchasers in the Massena market were aware of, and affected by, Dr. Mari-no’s testimony. There was no evidence to this effect and, moreover, it is highly unlikely that anyone outside of the scientific community would have had contact with Dr. Marino’s testimony.
If, on the other hand, claimants were offering the content of Dr. Marino’s testimony to establish that a reasonable basis for fear existed,[3] then the statements were being offered for their truth or falsity, in which case, the hearsay rule precludes their admission. In either event, said testimony is irrelevant and inadmissible as to the issue of the knowledge and motivation of prospective purchasers in the Massena real estate market.[4] An identical ruling was *448 made with regards to the proffered testimony of a Dr. Driscoll, also given at the PSC hearings.
Moreover, aside from the above-mentioned testimony, claimants presented no scientific expert on the subject of health hazard or potential adverse effects relating to the 765 kV line. Rather, the only other evidence presented by claimants bearing on this subject and the alleged effect of publicity on market value, was in the form of a PSC opinion (18 PSC 665, supra). However, the PSC in said ruling, while noting some possible problems, found that the line should be built, that problems which might arise could be adequately dealt with, and that, through the standards prescribed by the commission, potential adverse biological effects could be avoided. Unquestionably, in permitting the line to be built the PSC considered all the testimony before it and did not find any reason which would dictate their prohibiting the construction of the same.
Continuing, however, we cannot offhandedly state, as PASNY would like us to, that simply because the line was built there could not have existed any reasonable basis for fear on the part of prospective purchasers. We cannot believe that the PSC would have wasted five years, taken 14,000 pages of testimony, made several provisions for widening the right-of-way, and directed further testing if there never existed any reasonable ground for concern.[5] While it is true that ultimately no health hazards were definitively shown,[6] it would be unreasonable to ignore all of the PSC inquiries and the issues raised therein (see, generally, Atwell v Power Auth. of State of N. Y., 67 AD2d 365). Accordingly, we will examine further the claims that the presence of the 765 kV line had an effect on the property’s market value.
*449 In pursuing this issue, however, we find it important to note that an ultimate finding of the PSC was to the effect that: “765 kV lines are, except with respect to audible noise, qualitatively no different from the large number of 345 kV lines now in place throughout the State and nation. Society has accepted the use of 345 kV lines as among the prices to be paid for the benefits of abundant, reliable electric power at rates lower than otherwise would be the case; the use of 765 kilovolt transmission, subject to the necessary operating conditions and protective steps, represents no new incremental risk or burden to society.” (18 PSC 665, 672, supra.)[7]
Moreover, in a case involving a 345 kV line appropriation (Olin v State of New York, 41 Misc 2d 678, 687), the court, in denying consequential damages, cited with approval the following quote:
“[T]he Commissioners are well satisfied that there is no danger of risk involved for those who live adjacent to these power lines due to the effective safety devices that have been incorporated in said lines.”
“ The Commissioners would award consequential damages if the facts were such that the marketability of land adjacent to power lines were affected or if there was a common fear among the public of danger from the operation of said lines. However, the Commissioners have exhaustively studied the testimony adduced at the hearing and having read numerous articles on the subject have decided that none of the factors which would require a recovery for consequential damages are present and, therefore, makes no allowance for consequential damages.’” (Olin v State of New York, supra, p 687, citing New York State Elec. & Gas Corp. v Jantzi, Supreme Ct, Erie County, Dec. 14, 1960.)
It is our holding that since the PSC has found that, qualitatively, 765 kV lines are no different than 345 kV lines, and inasmuch as claimants have presented abso *450 lutely no admissible evidence to the contrary,[8] the rule which should be applied in determining whether consequential damages are caused by 765 kV lines should be no different than the rule stated in Olin v State of New York (41 Misc 2d 678, supra) or any other case dealing with 345 kV lines. (Lorig v State of New York, Court of Claims, Claim No. 57571, Dec. 29, 1975, and Oct. 5, 1976, DeIorio, J., affd 58 AD2d 734; Smith v State of New York, 49 Misc 2d 985, affd 29 AD2d 1050; Rabeler v State of New York, Court of Claims, Claim No. 53137, July 24, 1974, Albert, J.; see, also, McCormick v State of New York, Court of Claims, Claim No. 55180, Jan. 9, 1976, Albert, J.; Packard v State of New York, Court of Claims, Claim No. 53499, Dec. 6, 1973, Albert, J.)
In essence, these cases indicate that the decision as to whether consequential damages were or were not sustained by the imposition of high voltage transmission lines will be based on the actual pricing experience shown from before and after sales. (See, e.g., Rabeler v State of New York, Claim No. 53137, supra, p 9.) No lesser standard will be accepted here.
Moreover, viewing claimants’ appraisal in this light, it is most evident that the proof presented failed to establish by acceptable evidence the existence of consequential damages. While claimants’ appraiser indicated a diminution of *451 value by reason of the power line, the basis for his opinion was his research in the area, his reading of scientific material, especially Dr. Marino’s testimony, his experience, and discussion with numerous real estate brokers who were of the opinion that market values were affected. Notably, he gave no empirical data and presented no comparable sales to support his position; rather, after stating his opinion, he simply adjusted his seven after sales by a minus 25% to indicate the degree of damage which he felt the subject property sustained by reason of the imposition of the 765 kV line easement.
As to the opinion of real estate brokers as testified to by claimants’ appraiser, similar proof was presented in Rabeler v State of New York (Claim No. 53137, supra), where it was also proposed that the installation of power lines caused consequential damage. The court, after noting that “claimants’ appraiser stated his opinion and that of several real estate brokers, salesmen and lawyers that values of adjacent lands are impaired as a result of the presence of power or transmission lines in the area of the property being considered for sale”, went on to hold that “with respect to the purported views of persons listed in claimants’ appraisal, [that] this testimony should not be given weight, but that the decision as to whether consequential damages were sustained would be based on actual pricing experience shown from before and after sales.”
Moreover, as to the absolute lack of market data in claimants’ appraisal, we would quote from the decision in Lorig v State of New York (Claim No. 57571, supra, pp 9-10), where it was noted that: “Claimants’ appraiser * * * considered the psychological effect of the existence of transmission lines on prospective buyers and that if such buyers decided to purchase property encumbered by high voltage lines, they would do so only at a reduced price. No market data was submitted to support the appraiser’s opinion of the decline in market value based on the presence of transmission lines. He testified that his opinion was based on his experience as an appraiser.” The court went on to hold that, “[e]ven if [we] were to assume that *452 such a psychological effect exists, there is no evidence beyond the bald opinion of the appraiser to measure the extent of such an effect on market value.” (See, also, McCormick v State of New York, Claim No. 55180, supra.)
In contradistinction to claimants’ lack of proof, PASNY filed an economic impact study which was presented at trial for the purpose of disproving any consequential damages by reason of the 765 kV line. This study was not intended to establish the actual market value of the subject property, but rather was intended to show, by market data, that the imposition of extra high voltage power lines does not diminish market value.[9]
The court has thoroughly reviewed this economic impact study and, while there are some allocations between land and improvements which might unduly influence the ultimate conclusions, there are many sales which were capable of unadjusted comparison (except for time). We are of the opinion that said study supports PASNY’s appraiser’s opinion that the presence of a 765 kV line does not, in and of itself, cause consequential damage to the unencumbered remainder.[10] (See, generally, Smith v State of New York, 49 Misc 2d 985, 990, affd 29 AD2d 1050, supra.)
In conclusion on this point, we find that claimants failed to prove by any acceptable evidence that the mere presence of the 765 kV line caused consequential damages to the subject property. Moreover, the Power Authority, by competent evidence, established that generally, market value is not affected by the imposition of said lines (see Packard v State of New York, Claim No. 53499, supra). Accordingly, the court will only consider direct damages caused by the *453 Power Authority’s appropriation of permanent easements over 37 ± acres of claimants’ land, as well as any consequential damages which might have resulted from the alleged severance of claimants’ acreage into two parcels.

. Since the date of this taking, the Public Service Commission has directed the Power Authority to also restrict the construction of any building on this 50-foot wide cutting strip. However, no maps in that respect have as yet been filed, and when they are, any cause of action or right to payment will accrue to the current property owners, claimants’ grantees.

. Three PSC Opinions, viz., Nos. 76-2, 78-12 and 78-13 were offered and received as defendants’ Exhibits AA and Z and claimants’ Exhibit No. 27, respectively. For ease of reference, they will hereinafter be cited only by their opinion number.

. Which they profess not to be attempting, being of the opinion that such proof is unnecessary.

. While claimants’ appraiser testified that he had read and relied on Dr. Marino’s testimony in his research into market value, such use does not make the testimony admissible. (See, e.g., Rosario v New York City Health & Hosps. Corp., 87 AD2d 211; see, also, Pahl v Troy City Ry. Co., 81 App Div 308.)

. The direction for further testing was ultimately stricken by the Appellate Division on jurisdictional grounds. (Atwell v Power Auth. of State of N. Y., 67 AD2d 365,380.) However, the basis for said determination remained extant, i.e., 18 PSC 665.

. Note, however, that not even the rule presented by the defendant required the actual existence of health hazards, just proof that actual fear had its basis in reason. (See Heddin v Delhi Gas Pipeline Co., 522 SW2d 886, 888 [Tex]; see, also, Willsey v Kansas City Power & Light Co., 6 Kan App 2d 599.)

. See, also, 18 PSC 600, issued June 30, 1976 (prior to the date of taking), where a similar conclusion was stated. As to audible noise, the court had occasion to hear the same during its viewing of the subject. While clearly noticeable when standing very near the line, the crackling noise was barely discernible from several hundred feet.

. We would also note that in rebuttal to claimants’ appraiser’s testimony (that 765 kV lines presented significant health hazards), defendants presented testimony from several scientists and engineers who, in essence, stated that no health hazards or adverse effects have been shown to be caused by 765 kV lines. Claimants objected to the receipt of this testimony since these experts had not filed written reports. However, the court found said objection to be without merit. The rule in effect at the time of filing of this claim (Rules of Court of Claims, rule 25a, as amd to Sept. 9, 1976 [22 NYCRR 1200.27]), and hence controlling in this action, did not require the filing of rebuttal appraisals nor did it prohibit the testimony of nonvaluation experts who had not filed reports. (Cf. current rule 19 [22 NYCRR 1200.19].) Under the applicable rule, where a nonvaluation expert merely testifies concerning areas of his expertise and does not offer a prepared report, said testimony is permitted notwithstanding the fact that no report has been filed with the court. (See Hewitt v State of New York, 54 AD2d 812; Lawrence v State of New York, Court of Claims, Claim No. 48267, Dec. 10,1969, Cooke, J.; see, also, Mohawk Brush Co. v State of New York, Court of Claims, Claim Nos. 46554, 48370, 50055, Sept. 29, 1969, Cooke, J.; New Dorp Coal Corp. v State of New York, 58 Misc 2d 376; see, also, Central School Dist. No. 1 v State of New York, Claim No. 62430, Motion No. M-26798, Aug. 18, 1982, Hanifin, J.; cf. Novickis v State of New York, 44 AD2d 508.)

. Compliance with former rule 25a of the Rules of the Court of Claims (presently rule 19, 22 NYCRR 1200.19), is required for such a study dealing with comparable sales and the issue of damages to an appropriated parcel. (See Rabeler v State of New York, Claim No. 53137, p 10.) As correctly pointed out by claimants, certain sales contained in the study were not sufficiently identified so as to permit claimants to locate the same. Such sales, objected to by claimants and enumerated as follows, were not considered by the court: SBR-185, SBR-186, SN-91, SL-133, FB-222, FFC-199, FFC-198, FFC-174, SN-97, SC-292, SC-293, SN-100, SMD-91.

. We would make specific reference to comparisons of the following sales which we found especially supportive of the appraiser’s opinion: FFC-196 with FFC-197; SMA-199 with SMA-199A; SMD-86 with SMD-87; FB-8A with FB-220; SE-13A with SE-185.