■ DONALD ZAPPAVIGNA, Respondent, v STATE OF NEW YORK, Defendant, and POWER AUTHORITY OF THE STATE OF NEW YORK, Appellant. (Claim No. 74085.)—In a claim for damages resulting from a condemnation, the defendant Power Authority of the State of New York appeals from an additional judgment of the Court of Claims (McCabe, J.), dated July 27, 1990, which awarded the claimant an additional allowance of $34,310.53 based upon attorneys' fees, appraisal fees, and other necessary disbursements.

of New York, Appellant-Respondent. (Claim No. 74085.)—In a claim for damages resulting from a condemnation, the defendant Power Authority of the State of New York appeals on the ground of excessiveness, and the claimant cross-appeals on the ground of inadequacy, from a judgment of the Court of Claims (McCabe, J.), dated November 9, 1989, which, after a nonjury trial, awarded the claimant the principal sum of $94,567, consisting of direct damages of $53,352 and consequential damages of $41,215, arising from the appellant's partial taking of the claimant's property.

Ordered that the judgment is modified, on the law, by reducing the damages award to the principal sum of $61,801, representing direct damages; as so modified, the judgment is affirmed insofar as appealed and cross-appealed from, with costs to the appellant-respondent, and the matter is remitted to the Court of Claims for the entry of an appropriate amended judgment.

By power of eminent domain, on July 7, 1986, the State of New York, on behalf of the Power Authority of the State of New York, acquired easements on the claimant's property for the construction of a power line referred to as the "Marcy South Transmission Line". The subject property consists of approximately 137 acres located in the Town of Hamptonburgh, Orange County. The appropriation consists of a permanent easement for the actual construction of the power line, measuring 150 feet wide, with an additional "cut, trim and remove" easement of 50 feet on either side of the power line for the removal of any brush or trees which might obstruct the power lines. The combination of the construction easement and the cut, trim, and remove easement is 250 feet wide and approximately 3,100 feet long, for a total area of 17.8 acres or 775,368 square feet. An additional easement for an access road, measuring 30 feet wide by approximately 1038 feet, for a total of .715 acres or 31,145 square feet, runs essentially perpendicular to the power line easement.

In addition to seeking direct damages for the appropriation, the claimant asserted that the unencumbered property suffered consequential damages as a result of "cancerphobia", or a public perception that exposure to the electromagnetic fields emanating from high-voltage power lines pose health risks. To this end, the claimant offered expert testimony intended to show that there is a reasonable basis for public concern over the harmful effects of such electromagnetic fields, and his appraiser's opinion that property up to 1,200 feet on either side of the power line suffered a 90% damage rate. The

claimant also sought consequential damages for the general adverse effects of the presence of high-voltage power lines, such as visual pollution, noise pollution, and interference with radio and television reception. His proof on this issue consisted of his appraiser's opinion that property up to 600 feet on either side of the power line suffered a damage rate of 50%. On both aspects of consequential damages, the claimant's appraiser supported his opinion with a market study which, he opined, indicated an overall reduction in the value of properties situated closer to the Marcy South Transmission Line.

In response to the overall claim for consequential damages, the Power Authority's expert witnesses testified that there was no basis in scientific evidence for a fear of exposure to the fields emitted by power lines, and that high-voltage power lines have no effect on property values.

The trial court rejected the claimant's assertion that the subject property should be appraised as a single lot of undeveloped acreage with the potential for residential subdivision, and adopted the Power Authority's method of appraising the property as a subdivision, calculating damages based only upon those lots in the subdivision plan which were subject to the easement. After making adjustments to the values offered by the Power Authority, the court concluded that the subdivision lots subject to the easements had a total pre-appropriation value of $381,010. The court concluded that the areas of the construction easement and the access road easement constituted a 90% taking, while the "cut, trim, and remove" easement constituted a 25% taking. Based upon this damage rate, the court calculated direct damages in the amount of $53,352.

The trial court rejected the claimant's claim for damages based upon cancerphobia, but found the claimant's appraiser's market study to be some evidence of consequential damages based upon other factors, such as noise and loss of view. The court then adopted the Power Authority's after-values for four of the six lots subject to the easements, concluding that such values indicated appropriate consequential damage amounts. As for the remaining two lots, the court applied an additional consequential damage rate of 20% to the after values offered by the defendant. Based upon the court's appraisal of the lots as subject to the easements, the court found consequential damages in the amount of $41,215. When added to the direct damage award, the trial court found total damages in the amount of $94,567.

We disagree with the Power Authority's assertion that the trial court had no basis or explanation for its upward modifications of the pre-appropriation values offered by the Power Authority's appraiser. While it is true that a court's findings as to property values may not be based solely upon that court's subjective judgment (see, Matter of City of New York [Oceanview Terrace], 42 NY2d 948, 949), we find that the adjustments by the trial court in this case were supported by the record and sufficiently explained.

We find, however, that having determined the pre-appropriation value of the property, the trial court erred in calculating direct damages. After fixing damage rates of 90% and 25% for the construction and "cut, trim, and remove" easements, respectively, the court applied those rates to the post-appropriation values of the properties. The court erred in doing so, since direct damages are based upon the value of the property at the time of appropriation (see, 51 NY Jur 2d, Eminent Domain, § 157). Based upon the values of the properties prior to the appropriation, as determined by the trial court, the portion of the award based upon direct damages should therefore be increased to $61,801.

Both parties argue on appeal that the consequential damage award was defective. The Power Authority claims that there is no basis in the record to support any award of consequential damages. The claimant asserts that he should be compensated for an alleged reduction in value due to cancerphobia. We agree with the Power Authority.

It is widely accepted that a partial taking does not in itself cause a consequential loss (see, Matter of Town of Cobleskill [Hayman], 149 AD2d 876, 878; Niagara Mohawk Power Corp. v Olin, 138 AD2d 940, 941). Damages for such a loss must be based upon either the opinion of an experienced, knowledgable expert (see, City of Yonkers v State of New York, 40 NY2d 408), or on actual market data showing a reduction in the value of the remainder as a result of the appropriation (see, Miller v State of New York, 117 Misc 2d 444, 449-450). Furthermore, having rejected the claimant's appraisal of the property, the trial court was bound to accept the Power Authority's appraisal, unless there is support in the record and sufficient explanation for a different conclusion (see, Matter of City of New York [Oceanview Terrace], supra; Matter of City of New York [A. & W. Realty Corp.], 1 NY2d 428, 433).

We find that the record contains insufficient evidence to support an award of consequential damages. The court's deter-

mination of the value of the property after the appropriation appears to have been based solely upon its subjective opinion. We therefore conclude that there is no basis in the record for the trial court's award of consequential damages, and modify the judgment by vacating that part of the damages award *(see, Matter of Town of Oyster Bay [Pre-Schooler's Workshop Corp.]*, 174 AD2d 676).

We find no merit to the claimant's contention that the trial court erred in appraising the subject property as a subdivision, rather than as a single lot with potential for subdivision. Condemnation awards are based upon the highest and best use of the property appropriated *(see, Keator v State of New York*, 23 NY2d 337, 339). The record indicates that having obtained preliminary approval for his subdivision plan, the claimant was all but assured of obtaining final approval. It was therefore reasonably probable that the subject property would or could be used as a residential subdivision in the near future *(see, Matter of City of New York [Broadway Cary Corp.]*, 34 NY2d 535, 536; *Matter of City of New York [Shorefront High School—Rudnick]*, 25 NY2d 146, 148-149). While the trial court may have erred in appraising only those lots in the preliminary plan which would ultimately be subject to the easements, rather than the entire subdivision, this error is academic in light of our decision regarding consequential damages. Mangano, P. J., Harwood, Miller and Santucci, JJ., concur.