■ ARTHUR H. BIENENSTOCK, Respondent-Appellant, v STATE OF NEW YORK, Appellant-Respondent. (Claim No. 85601.) [732

NYS2d 42] —In an eminent domain proceeding, the State of New York appeals (1) from a decision of the Court of Claims (O'Rourke, J.), dated December 27, 1999, and (2), as limited by its brief, from so much of a judgment of the same court, dated March 21, 2000, as, after a nonjury trial, awarded the claimant consequential damages, and the claimant cross-appeals from the decision, and, as limited by his brief, from so much of the same judgment as awarded him the principal sum of only $283,407 for the direct appropriation of his land.

Ordered that the appeal and cross appeal from the decision are dismissed, as no appeal lies from a decision (*see, Schicchi v Green Constr. Corp.*, 100 AD2d 509); and it is further,

Ordered that the judgment is modified, on the law and the facts, by deleting therefrom the award of damages in the total sum of $701,003 and substituting therefor an award in the total sum of $1,264,125.50; as so modified, the judgment is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.

We agree that the highest and best use of the subject parcel at the time of vesting was for retail purposes in a B-H Zone. Since the defendant's appraiser valued the damages as if the property were in a B-Sc Zone, an advent that was to occur almost two years after the valuation date, the Court of Claims should not have relied on his appraisal. This does not mean that the Court of Claims was required to accept the valuation of the claimant's appraiser without question. Yet, the claimant's appraiser sets the outer limit of the award to the claimant unless there is a sufficient basis for a different conclusion (*see, Zappavigna v State of New York,* 186 AD2d 557, 560).

Contrary to the findings of the Court of Claims, we find that Building E could have remained as part of a new retail operation for the claimant's acreage after it was diminished by the widening of Route 9, and Building K would have been available as well but for its destruction in the widening. Therefore, the Court of Claims erred to the extent it diminished the "Before" value for the cost of demolishing that part of the structure designated as Building E and to the extent it enhanced the "After" value for the saved cost of demolishing Building K.

Similarly, the Court of Claims analyzed the value of the remaining parcel relative to consequential or severance damages in an inconsistent fashion. If demolition were to take place to realize the highest and best use of the remaining parcel, more than adequate space for front parking would remain, and any reduction in overall parking would be amply

compensated by the 5% adjustment the Court of Claims made for "the reduction in potential size of the improvement available to claimant for retail use after the taking."

Therefore, we substitute the following findings for those made by the Court of Claims: The "Before" value is $5,127,627. The "After" value is $4,077,711. The total direct damages are $1,049,916. The consequential damages are $203,386.50. While claimant's appraiser estimated direct damages (derived somewhat differently) at $820,000, a sufficient basis exists for finding total direct damages to be $1,049,916 (see, Matter of City of New York [Oceanview Terrace], 42 NY2d 948, 949; Matter of City of New York [A. & W. Realty Corp.], 1 NY2d 428, 433; Zappavigna v State of New York, supra, at 560).

The claimant is also entitled to the value of the temporary easement that the Court of Claims calculated to be $10,823, to which neither party objects. Ritter, J. P., S. Miller, Friedmann and Crane, JJ., concur.